Dorland v. Dorland.

---

2 63
64h 165

DUTCHESS SPECIAL TERM, December, 1847. *Strong*, Justice.

## DORLAND and wife *vs.* DORLAND and others.

A testator by his will directed that his wife and his three minor children should remain on the farm where he resided at the date of the will, until his youngest child should arrive to the age of ten years, with the stock, farming utensils, and household furniture, together with the provisions and grain on hand, if his wife should remain his widow; unless his executors should find it necessary to dispose of the farm and personal property sooner; which he directed and empowered them to do if they should find it necessary to sell the property at public or private sale, at their discretion, and to give a sufficient title for the land. If the widow remained on the farm she was to have the profits thereof for the support of herself and the children, and their education. When the farm should be sold the money arising from the sale was to be divided as follows: To the testator's wife was given and bequeathed $500; to his daughters, A. and M., and to his son J., each $250; which sums the testator directed his executors to put at interest, and apply the interest for the support of the legatees; the legacies of the daughters to be paid to them when they should arrive at the age of eighteen years; and the legacy of the son to be paid when he reached the age of twenty-one. The testator also gave and bequeathed to his wife, one cow, and a bed, bedstead, and bedding sufficient for the same; which, with the provision previously made for her, was declared to be in lieu of dower. Likewise, when the farm should be sold, she was to have one cow, and as much of the household furniture as would be sufficient for her and the accommodation of the children, at the discretion of the executors, if she should remain the testator's widow. If she should marry, the testator directed that she should have the cow, bed, and bedding. The testator gave and bequeathed to his son, A. $430, to be paid him when the farm should be sold. As the testator held obligations against his three sons, J., I. and S., he directed that if either of their obligations should amount to more than each one's part in the general division of the estate, the sons should not be called upon to pay any part of the same. And if there should remain any money on hand after the testator's affairs were settled, he directed his executors to pay such part to his son, A., toward his legacy, as might appear proper to them. What should remain of the estate, after paying the legacies, the testator directed to be equally divided amongst his children.

### Dorland v. Dorland.

By a codicil to his will, the testator authorized and empowered his executors to make use not only of the interest of the legacies given to his wife, and to his daughters A. and M., and to his son J., but also of the principal, as from time to time might appear necessary for their support. In case there should be any more children by his wife than those mentioned in his will, before or within nine months next after his decease, he gave to them the same legacy as his other three children named in the will; and the testator further directed that his wife, in case she remained his widow, and his minor children, should have the privilege of remaining on the farm until his youngest child should be of age, unless his executors should find it necessary to sell the same sooner.

After the execution of the codicil another daughter of the testator, by his wife, was born, who, at the time of filing the bill, was about the age of nineteen years. Subsequent to the death of the testator his widow married again:

*Held*, 1. That the term given by the will to the widow and minor children, in the use of the stock, farming utensils, &c. was not extended by the codicil, but the fourth child was to be provided for in like manner with the other three; and that the term expired when the third child attained the age of ten years. That until then the widow and her four children were entitled equally to the use of the personal property. That the absolute title to it was not bequeathed to them, but remained in the executors, subject to the right to the use of it bequeathed to the widow and her four children.

2. That as the personal property was to be used by the widow and minor children specifically, and not as a general fund, they were not chargeable with its value at the death of the testator, but for what it was worth, or would have been worth from prudent usage, at the time when their right to its enjoyment expired.

3. That the proper rule for the valuation of the effects left for the use of the widow and minor children, was to assume what they were worth at the time of the testator's death, and to deduct the probable diminution in value by wear and tear and the death of stock between that time and the end of the term.

4. That the widow and her four children were entitled to the use and enjoyment of the real estate until the youngest child should attain the age of twenty one years; the children absolutely, and the widow, unless she should marry in the meantime. And in case she did marry, then only to the time of her marriage. That the children were not bound to account to the other heirs for the rents or profits of the land; and that the produce on hand at the expiration of the term, and the stock, farming utensils, and furniture were their property.

5. That there was nothing in the gifts of the use of the real and personal estate to the widow and minor children which would suspend the absolute power of alienation of the estate, or the ownership of the personal property, for a longer period than during the lifetime of the widow and the minority of her youngest child. And that neither the devise or bequest of such use, nor of the property over, was void as contravening any rule applicable to executory devises.

6. That the widow was entitled to one cow and a bed, bedstead and bedding for the same, immediately after the death of the testator. But as the farm was not sold during her widowhood, she had no right to another cow, or any additional household furniture.

Dorland *v.* Dorland.

7. That the executors were fully empowered to sell and convey the real estate. They had the power to do so, at their discretion, before the youngest child arrived at the age of twenty one years; and they are bound to do so, now:

8. That as the postponement of the sale of the real estate, and of the payment of the avails to the widow and minor children was for their benefit, and not from any considerations personal to the legatees generally, they took a vested interest in their legacies immediately after the decease of the testator; and the estates of those who had died were transmissible to their representatives.

A clause in a will by which the testator directs that when his farm is sold the proceeds shall be divided, among the legatees, and in the manner therein specified; by necessary implication gives to the executors a general power to sell; although they are not named in the will as the donees of the power.

No formal set of words, in a will, is requisite to create or reserve a power. The language of the testator is to be construed equitably and liberally, in furtherance of the intention.

Where the gift of a legacy is absolute, a subsequent direction to the executors to put the money at interest for the support of the legatee does not in any manner revoke or qualify, the donation. It merely relates to the investment; and being inconsistent with the absolute title before given to the legatee, it is null and void.

There can be no valid qualification, subsequently attached, to a fee simple absolute in lands, or to a full title to personal property.

A direction in a will, that the executors shall pay to a legatee such part of a legacy previously given in absolute terms, as may appear proper to them, is inconsistent with the absolute gift, and is therefore void.

In Equity.  The bill in this cause was filed by Isaac Dorland and Letty his wife, the said Isaac being one of the children and heirs at law of Samuel Dorland deceased, against the other heirs, the widow, and the executors, of the testator, to obtain a judicial construction of his will and codicil and for the sale or partition of the real estate of which the testator was seised at the time of his death.  The bill stated that the testator died in the year 1828, being at the time seised of a farm containing about 80 acres situate in the county of Dutchess.  That the testator, many years ago, had married the mother of the plaintiff, Isaac Dorland, and that she died in the year 1817.  The testator subsequently married a second wife, Sarah, who survived him, and is still living; and he left children and heirs at law the issue of each of said marriages:  That the farm was owned by the testator prior to his second marriage, and was not derived directly, or indirectly, through his second wife.  By his will, which was executed in 1824, the testator devised and directed

Dorland v. Dorland.

as follows: "Firstly, I direct my executors to pay all my just debts and funeral expenses, out of my estate. Secondly, my will is that my wife Sarah Dorland, and my three minor children, namely Anna, Jonathan and Mary, remain on the farm on which we now live, until my youngest child arrives to the age of ten years, with the stock, farming utensils and household furniture together with the provisions and grain on hand if she remains my widow, unless my executors should find it necessary to dispose of said farm and personal property sooner, which I hereby direct and empower them to do if they should find it necessary to sell said property at public or private sale at their discretion, and give a sufficient title for the land. If she remain on the farm she is to have the profits thereof for her and their support and schooling of the children, and when the farm is sold, the money arising from said sale is to be divided in the following manner. I give and bequeath to my wife Sarah five hundred dollars. I give unto my daughter Anna two hundred and fifty dollars. I give unto my son Jonathan two hundred and fifty dollars. And I give unto my daughter Mary two hundred and fifty dollars. All of which I direct my executors to put at interest and apply the interest for her and their support; the girls' money to be paid them when they arrive at the age of eighteen years, and Jonathan to be paid his when he arrives at the age of twenty one. I also give and bequeath to my wife Sarah, one cow, and a bed, bedstead, and bedding sufficient for the same, which with the above is in lieu of dower and power of thirds. Likewise, when the farm is sold she is to have one cow and as much of the household furniture as will be sufficient for her and the accommodation of the children at the discretion of the executors if she remains my widow. If she should marry, my will is that she should have the cow, bed and bedding above mentioned. I give and bequeath to my son Andrew Dorland four hundred and thirty dollars to be paid him when the farm is sold. And as I hold obligations against my three sons John, Isaac and Seaburn, if either of their obligations should amount to more than each one's part in the general division of my estate, my will is that they are

Dorland *v.* Dorland.

not called upon to pay any part of the same. And further, if there should remain any money on hand after my affairs are settled I direct my executors to pay such part to my son Andrew Dorland towards his legacy as may appear proper to them. If there should arise any dispute as to the settlement of my estate I hereby empower my executors to leave the same to a reference. And it is my will that what remains of my estate, after paying out the above legacies, be equally divided amongst my children ; and it is my desire that my executors should take charge of my family affairs. And lastly, I hereby nominate, constitute and appoint my son Philip S. Dorland, Stephen Moore, Gilbert Dorland, and George Congdon executors to this my last will and testament."

By a codicil dated May 30th, 1826, the testator devised and directed as follows: "Item, in my will I gave unto my wife Sarah five hundred dollars. I also gave unto my daughter Anna two hundred and fifty dollars, to my son Jonathan two hundred and fifty dollars, and to my daughter Mary two hundred and fifty dollars, and I directed the interest of the aforesaid sums to be applied to their support. It is my will that my executors viz. Stephen Moore, Gilbert Dorland and George Congdon, whom I now appoint as my only executors, be hereby authorized and empowered to make use not only of the interest but also of the principal as from time to time may appear necessary for their support. And also in my aforesaid will I desired my executors to take charge of my family affairs my meaning therein that it be in consulting and advising with my wife Sarah in the management thereof. Further should there be any more children than those mentioned in my will by my wife Sarah, be the same male or female before or within nine months next after my decease then in that case it is my will that they have the same legacy from my estate as my other three children above named and like them provided for. Further I also direct, and it is my will that my wife Sarah in case she remains my widow, and my minor children, have the privilege of remaining on the farm until my youngest child is of age

Dorland v. Dorland.

unless my executors find it necessary to sell the same sooner as expressed in my will."

In 1845, after the death of the testator, his widow intermarried with Ira Hoag. The plaintiffs insisted that upon her re-marriage the right and title of the widow, and her children by the testator, to the use and occupation of the lands and premises, under and by virtue of the testator's last will and testament and codicil, ceased and determined, and that the equitable or legal title to such lands and premises became vested in the heirs at law of the testator. And that, upon the happening of that event, it was the duty of the executors to sell and dispose of such real estate; and that they had been requested to do so, but they denied that they had any power to sell the same, except by the order of a court of equity. The bill alleged that Sarah C. Dorland, one of the children of the testator, was an infant of the age of about nineteen years; and that the children of the second marriage claimed that they had the exclusive right to use and enjoy the real estate until the said Sarah C. Dorland should arrive at the age of twenty-one years.

The bill also alleged that at the death of the testator he left on his farm a considerable amount of stock, farming utensils, household furniture, and personal property, which had been taken and used by the widow and the children of the second marriage; who had occupied the farm since that time. And that stock, farming utensils, &c., had been from time to time used and exchanged for other stock, farming utensils, &c.; which property, or a considerable portion thereof, together with grain on the ground, remained on the farm, and the executors refused to take charge of the same or administer thereon; alleging that they had no power to act further in the settlement of the estate. The bill alleged that doubts had arisen as to the true construction of the will, and the codicil, and as to the power which the executors had thereunder, and whether they had any power to sell the real estate; and also whether the legacies were valid, and whether the whole will and codicil were not void for vagueness and uncertainty.

Dorland v. Dorland.

The bill prayed that the court would give a construction to the will, and decide and settle the respective rights and interests of the several parties; that the executors might be decreed to sell the real estate, in case the court should decide that they had not lost their authority to do so, and to divide the proceeds among those entitled thereto. That in case it should be decided that the executors had no authority to sell the real estate, then that partition might be made thereof, according to the respective rights and interests of the parties, in case the same could be made without material injury to the interests of the several owners. And if partition could not be so made, then that the premises might be sold, and the moneys divided among the owners, according to law. The bill also prayed for an injunction, and a receiver.

The defendants put in answers, admitting most of the facts charged in the bill, but insisting upon a different construction of the will from that claimed by the plaintiffs. The cause was heard upon the bill, answers and replications, and upon proofs.

*T. C. Campbell*, for the plaintiffs. I. The will is void for uncertainty and vagueness. The property is not fully disposed of by the will. No one can determine whether the testator means the pretended gifts to the children and wife as legacies, or appropriations for their support, for a time. It is impossible to find out the meaning of the testator; or what disposition he intends to make of the estate. (*See Bryer* v. *Bryer*, 6 *Dana*, 313; *Bayeaux* v. *Bayeaux*, 8 *Paige*, 333.) II. These rules are to be observed and adopted in construing a will. (1.) To discover the testator's intent is the great object in construing a will. (2.) That intent must be gathered from the will itself, and from nothing else. The intent must be gathered from the words of the will. (3.) The intent of the testator is to be taken as things stood at the time of making the will. (*Willes' Rep.* 297.) (4.) Where any part of a will is ambiguous, the whole will is to be examined to ascertain the intention of the testator in that part. (*Ogden* v. *Smith*, 2 *Paige*, 197. *Covenhoven* v. *Shuler*,

*Id.* 129, 130.) (5.) The intention is to be drawn from the whole will, and not from any particular part. (6.) When the intent is ascertained, then the question arises, is the intent consistent with the rules of law? If consistent, the will stands; if not, it is void. (*Hawley* v. *James,* 16 *Wend.* 144, *per Bronson, J.*) III. The executors in this will have no power to sell. They had a power, but the time is passed when they could exercise it. (1.) The executors have no estate of any kind in the land or property. They had a mere naked power to sell, limited to a specific time. (*Jackson* v. *Schauber,* 7 *Cowen,* 193, 196. *Berger* v. *Bennett,* 1 *Caines' Cas.* 15. *Sharp* v. *Platt,* 15 *Id.* 612. 2 *Wend.* 13.) (2.) The power has ceased by lapse of time; and the executors have now no control over the property. (3.) There is therefore no estate in the executors; they have not even a power of sale, and the estate therefore vests in the heirs at law of Samuel Dorland, so far as the executors are concerned. (*Waldron* v. *McComb,* 1 *Hill,* 114.) These authorities and remarks are a sufficient answer to the claim which has been set up that there is a substantial power of sale; or that a power is to be implied from the words of the will. It is a naked power. No estate is given; and therefore nothing is to be presumed in its favor. And if the power is not expressly given, there is no power. Again; there is a power expressly given, and that cannot be extended now. It repels the idea that the executors have a power by implication. The executors indeed admitted and claimed that their power to do any thing with the estate had ended. (4.) The executors so stated, by Gilbert Dorland, one of their number. His declarations should bind the others, so far as their understanding of the power is conclusive; because he had, as he stated, just seen them. He had power to prevent any sale; as it is necessary, even if they had a power of sale, that all the executors should join in the sale. (1 *R. L.* 366, § 11. 1 *R. S.* 735, § 112. *Coke Lit.* 112, *b,* 113, *a,* 181, *b.* *Roseboom* v. *Mosher,* 2 *Denio,* 69.) (5.) Courts should never imply a power to sell in executors. (1 *Hill,* 114. 1 *Saund.* 397.) Because we contend they have no right to do so, in any case. There is no necessity for so doing, ex-

Dorland *v.* Dorland.

cept where the power has been acted upon ; which is not the case here. Sales under a doubtful power cause the property to sell for less than its true value, and encourage litigation. IV. By this will the land is not devised to any person. The fee has always been in the heirs of Samuel Dorland, and is in them now. (*Jackson* v. *Schauber*, 7 *Cowen*, 197. 1 *Caines' Cas. in Err*. 15. *Jackson* v. *Bunn*, 9 *John*. 104.) (1.) The executors had, as stated, a mere naked power to sell before the youngest child mentioned in the will became ten years old. (2.) The executor did not see fit to so sell, and they have no right whatever to sell now. (3.) They (the executors) never had any beneficial interest in the estate, and the fee must be somewhere. It is in the heirs at law of Samuel Dorland. (4.) Where there is an executory devise of real estate, and the freehold is not devised, the inheritance descends to the heir. (4 *Kent's Com.* 284, 286. 1 *Ves. Rep.* 127.) V. The devise of the estate for the use of the minor children, and Sarah, the wife was a devise during the widowhood of Sarah ; and she having married, neither the children nor the wife have any right to use the property longer. The will shows that the land was devised specifically to the wife, to be held by her during widowhood ; and on her marriage the children were provided for, by another clause of the will. (*See Crandell* v. *Hoysdrodt*, 1 *Sandf. Ch. Rep.* 40.) Where the first part of a will is plain, and express words are used afterwards inconsistent with the former part but not cancelling it, it will not affect it; but the former part will be deemed the will of the testator. (2 *Paige*, 130. 11 *Ves.* 148. 1 *Paige*, 343. 2 *Bligh's Rep.* 56.) VI. The last provision of this codicil only gives the infants the right, if it gives them any separate right, of remaining on the farm till the youngest child born or begotten at the date of the will was 21 years. We contend the will means this, on being fairly construed. The rules for construing a will of real and one of personal estate are different. A will of personal estate takes effect at the testator's death. A will of real estate takes effect from the time it is made. Sarah C. Dorland, the infant, was not then begotten, as appears from her answer, and could not

Dorland *v.* Dorland.

therefore be considered as one of the children. She was not born till after her father's decease. If the defendants are correct in their construction, then the estate to Sarah C. is void under the laws existing at the time the will was made. It was an estate for lives in being and more than 21 years and nine months, and is void. (*Taylor's Prec. of Wills*, 42, *n.* *Ram on Wills*, 6. 4 *Cruise,* 449. 4 *Kent's Com.* 283. *Hawley* v. *James,* 16 *Wend.* 120, 170.) The bare possibility, at its creation, that the event upon which the estate depends may exceed in point of time the authorized period, is fatal to it. (4 *Kent's Com.* 283. 4 *Cruise,* 449. 2 *Burr.* 873.) The rule is different by the present revised statutes; under which this devise would have been absolutely void. (*See* 1 *R. S.* 718, § 15, 2*d ed.*)

VII. Are the bequests, or legacies as the defendants call them, to the wife and others in the will valid? We insist they are not. It seems to us they are only to be looked upon as legacies to take effect if the executors exercise the power of sale as expressed in the will. The words "*and when*" should read "*and if.*" This can be done, if it is necessary to give a fair and reasonable construction to the will. The legacies, if they can be called legacies, were contingent, and made to depend on an event which may not, and cannot, under the will, happen. (*See Taylor's Prec. of Wills,* 450, *n.*) The legacies are limited upon a contingency that might extend beyond lives in being and twenty-one years and a fraction of a year, and the limitation is void. (*Hawley* v. *James,* 16 *Wendell,* 170. *Emmons* v. *Cairns,* 2 *Sandf. Ch. Rep.* 279.) The legacies are contingent. The contingency was whether the executors sold or not. They did not sell, and the legacies are void. VIII. The personal property on the farm of the testator belonged to the estate, and not to the wife Sarah and her children. (1.) The use of the property, only, is given by the will. (2.) The property was exchanged for other property of the same kind; and the rule should be that the property obtained in exchange belongs to the estate; and an inventory should be taken of the articles of personal property. (3.) We claim that the personal property should have been sold, and the proceeds invested, and the interest

Dorland *v.* Dorland.

have been paid to the minor heirs and widow, and the principal finally to the heirs at law. (*Covenhoven* v. *Shuler*, 2 *Paige*, 132. *How* v. *Earl of Portsmouth*, 7 *Ves.* 137. *Preston on Legacies*, 96. *Roper on Legacies*, 209.) IX. The testator evidently meant that if his widow Sarah married again, or left the farm, that she should have nothing but the cow and the bed. These are the words and meaning of the will, if properly construed. (*Van Orden* v. *Van Orden*, 10 *John.* 29. 1 *Id.* 906.) She had her choice between the two provisions in the will, but could not have both. She accepted the provision in lieu of dower, and is bound by that acceptance. (*Kennedy* v. *Mills*, 13 *Wend.* 553.) When the wife once elects between dower and the provisions of the will, the right of dower is barred forever, and she must abide by her election. (4 *Kent's Com.* 57, *and note A.*) She is to be deemed to have elected to take the provisions in the will, unless she enters on the lands, or commences proceedings in dower, within one year. (1 *R. S.* 742, § 15.) X. The bequest of $500 to the widow is only for her use, and not an absolute gift ; and she having married again has lost forever the use of this gift. XI. It was proper to ask for a construction of the will; and the executors, and the other defendants, having in reality asked for a construction of the will, the complainants must have costs, under any circumstances. (1.) The rule is, that where the will is so loosely drawn that it is proper to ask the construction of the court concerning it, the costs are to be paid out of the estate of the testator. (*Rogers* v. *Ross*, 4 *John.* 608. 3 *P. Wms.* 303.) (2.) The executors have a right to ask the court to construe a will, in a proper case. The executors here, in so many words, ask for the construction of this will, and admit there is great doubt as to the true construction. (3.) Costs in equity, in every case, are in the discretion of the court. (*Garr* v. *Bright*, 1 *Barb. Ch. Rep.* 165.) (4.) We have a right to ask the protection of the court in regard to the personal property ; and the court having thus gained jurisdiction will construe the will. (*Emmons* v. *Cairns*, 2 *Sandf. Ch. Rep.* 369.) (5.) The executors themselves gave the plaintiffs to understand their powers had ceased, and in-

Dorland v. Dorland.

sisted that the property should be sold. The bill was filed in good faith. XII. The defendants admit that their right to the use of the real and personal estate has ceased now. There should be a decree at least against them construing the will, and directing the property to be sold.

*J. Emott Jun.*, for the executors. I. The will in controversy here, directs that this farm, and all the testator's real estate, be sold to provide a fund for the discharge of certain trusts, and to pay the legacies given in the will, and his debts, if any, without saying in express terms by whom the sale is to be made. In such cases the rule is well settled, that the executors by whom the fund, thus to be raised, will be distributable, take, by implication, a power to sell. (*Sugd. on Powers*, ch. 3, § 3, *p.* 137, *ed.* 1836. *Id. ed.* 1837, *vol.* 1, 134, 138, 167. *Id.* 1st *Amer. ed.* 392. 2 *Sim. & Stew.* 238, *Coke Lit.* 112, *b.* 10 *Peters,* 563. 4 *Hill,* 500. 2 *John. Ch.* 259. 2 *Atk.* 420.) II. There is no devise to the executors of the rents and profits of this land, or any part of them ; either before, during, or after, the estate of the widow and children, whatever that estate may be ; and the power to sell vested in the executors by force of implication from this will, gives them no estate, legal or equitable, in the land, but it is a mere naked power in them, simply collateral, and without an interest. So that if this devise to the widow and children had not been interposed, the land would have *descended,* on the testator's death, directly to the heirs at law, subject only to this power : and the estate of the widow and children having been created and interposed by the will, the land still descended, subject first to that estate, and then to this power. Upon the determination of that estate, whenever it does determine, the heirs at law may enter, and will be entitled, thenceforth, to the rents and profits, until their estate is divested by a sale under the power. But the executors can never enter on the land, or take, or in any way claim, or receive, the rents and profits. And, therefore, they cannot be held accountable for them, or any part of them. (*Coke Lit.* 236, *a.* 3 *Ves,* 515, *Sugd. on*

Dorland *v.* Dorland.

*Powers,* 393, 1*st Amer. ed. ch.* 6, § 3. 3 *East,* 553, 558.)
III. As to the emblements, or crops growing on the farm, when
this estate of the widow and children should determine. If
the estate was terminated by the widow's marrying, according
to the construction contended for by the plaintiffs, then the
crops, or at least the children's share in them, would belong to
the children, because the estate was an uncertain one, and was
determined without their fault, by the act of another; or if
this be not so, then the crops would go, with the lands, to the
heirs, who acquired the immediate right of entry. In either
point of view the executors have nothing to do with the crops.
IV. The clause which is in dispute in this will, gives an es-
tate to the children as well as to the widow; they are named
equally with her in the terms of the devise, and that, not
merely because as her family, they are to enjoy a residence
on this farm, in consequence of a legal estate therein being
vested in her who is the head of the family, but as direct and
independent grantees and beneficiaries, and so that they be-
came *tenants in common* with her in the interest or estate
in the premises created by this devise, whatever it is. It does
not follow, therefore, from the terms used in this clause, or
from the nature of the estate, or from any other cause, that
the same condition, or conditional limitation is annexed to
their estate as to hers; or that the same event which was to
determine hers was also to determine theirs. V. The general
limitation of all these estates, created by this clause, is until
the majority of the youngest child. And there is no condition,
or conditional limitation, whatever, annexed to the estate of
the children, but only to that of the widow, whose interest
might be of equal duration with that of the other tenants, but
might also be determined by the breach, on her part, of the
condition of widowhood annexed to her enjoyment. No court,
especially no court of equity, will favor a condition of this
kind, or enlarge its effect, so as to divest these children of their
rights in the premises; and that not by the effect of their own
act or default, but as a consequence of the independent act
of another. And that the children should all of them continue

to occupy this farm, at all events, until the youngest child becomes of age; so, that so long as their mother should have formed no new connexion, she might be their head, and when, if ever she should leave them, on marrying again, they might still continue to have a home until they had all attained an age sufficient to provide for themselves, is the reasonable construction of this will, and the plain intention of the testator; and this is a disposition of the property that should be favored by this court. VI. The bill is not properly filed for an account of the personal property left on the farm, according to the will; because no such account can or will be taken of a part of the personal estate alone, and not of the whole; and the final settlement of the executor's account, is not only not asked for in the bill, but cannot be had until this real estate has been converted into personalty and distributed, or got ready for distribution as the will directs. (4 *Hare's Rep.* 1.) VII. But as to the personal property, stock, &c., which was left on the farm for the widow and children, it was directed to be left for their use; they have used it carefully and with good husbandry, as is abundantly proved; and what will remain at the termination of their estate, will go into the fund to be distributed by the executors; and for so much they will account, together with the proceeds of the realty, if the executors are accountable at all for things *quæ ipso usu consumantur*, thus bequeathed to the use of legatees. Whatever stock or property has been bought by the widow and children with the proceeds and avails of the farm is their exclusive property, because these proceeds and profits belonged to them. (2 *Paige*, 131; 2 *Myl. & Keen*, 699, 703.) VIII. The executors have acted with entire good faith, and offer in their answer, as well as now at the hearing, to exercise this power in any way and at any time that the court may decree. The declarations of Gilbert Dorland, which were attempted to be proved, are not only insensible and without meaning, and irrelevant, but are not evidence at all under the familiar principle that the declaration or confession of one of several executors is not evidence against the others, or the estate, unless

Dorland *v.* Dorland.

fortified and corroborated by a precisely similar declaration of all the others. (5 *Wend.* 558.)   IX. The plaintiff is shown by the pleadings and proofs, to have no interest in the fund to be raised by this sale, nor in the exercise of this power, and therefore has no right to call on the grantees of the power for its exercise; and for this cause, if for no other, the bill should be dismissed.

STRONG, J.   There is sufficient in the will of Samuel Dorland to authorize the call which the plaintiffs make upon this court to give it a judicial construction.   There are doubtful clauses in reference to the disposition as well of the personal as of the real estate.   There are also doubts as to the validity and extent of the power to sell the testator's land, given to the executors.

The will is inartificially drawn, and some of the intentions of the testator are expressed in obscure, if not contradictory, terms.   But I think there is sufficient in the will and codicil, together, to denote the main intentions of the testator, and to carry them into effect.   At any rate, there is not so much uncertainty as to require this court to pronounce the two instruments, or either of them, null and void.

The testator's widow, and his four children by her, were entitled to the use of the stock, farming utensils, provisions, grain and household furniture, not required for the payment of his debts, and excepting the cow, bed, bedstead and bedding bequeathed absolutely to the widow, until his farm should be sold, or the widow marry, or their third child should arrive to the age of ten years, whichever should first happen.   The term was not extended by the codicil, but the fourth child was to be provided for in like manner with the other three.   As it turned out, the term expired when the third child attained the age of ten years.   Until then, the widow and her four children were entitled equally to the use of such personal property.   That the absolute title to it was not bequeathed to them is evident from the authority given to the executors to sell the personal property at any time within that period, if they should deem it ex-

Dorland *v.* Dorland.

pedient. The title remained in the executors, subject to the right to the use of it bequeathed to the widow and her four children. As it was to be used by them specifically, and not as a general fund, they are not chargeable with its value at the death of the testator, but for what it was worth, or would have been worth from prudent usage, at the time when their right to its enjoyment expired. There was not, however, any actual valuation of it at that time ; and as it remained in the possession of the widow and her children, and was doubtless subsequently much deteriorated, if not entirely consumed or worn out, it cannot now be restored in kind, to the estate. The only alternative left, is for the widow and her children to account for its then value. And the one-fifth part must be deducted from the legacies payable to each from the avails of the real and personal estate. It is difficult to establish a rule for the valuation of the effects left for the use of the widow and minor children, as they were, or should have been, when the third of those children arrived at the age of ten years. I can conceive of none better than to assume what they were worth at the time of the testator's decease, and deduct the probable diminution by wear and tear, and the death of stock, between that time and the end of the term. It must be referred to Ulysses Cole, Esq., to take and report an account upon those principles. The parties who have appeared have all a right to be heard, and must be summoned to attend the reference.

The widow and her four children were entitled to the use and enjoyment of the testator's land until the youngest child should attain the age of twenty-one years ; the children absolutely, and the widow unless she should marry in the mean time. And if she did marry, then only to the time of her marriage. The codicil is very clear to that effect, and the duration of the estate of the children is in no manner dependent upon the marriage of their mother, except that upon the happening of that contingency they were entitled to the entire use of the property during the residue of the term. They are not bound to account to the other heirs for the rents or profits of the land. And the produce on hand at the expiration of the

Dorland v. Dorland.

term, and the stock, farming utensils, and furniture, were their property.

There is nothing in the gifts of the use of the real and personal estate to the widow and minor children, which could suspend the absolute power of alienation of the real estate, or the ownership of the personal property, for a longer period than during the lifetime of the widow and the minority of her youngest child. Neither the devise or bequest of such use, nor of the property over, was void as contravening any rule applicable to executory devises.

The widow was entitled to one cow, and a bed, bedstead and bedding for the same, immediately after the death of the testator. As the farm had not been sold during her widowhood, she has no right to another cow, or any additional household furniture.

The executors are fully empowered to sell and convey the real estate. They had the power to do so, at their discretion, before the youngest child arrived at the age of twenty-one years. They are bound to do so now. The first provision on the subject clearly gives them the power to sell, if they should deem it necessary, before the third of the minor children should attain the age of ten years. There is strong reason to infer, from the whole of that clause, that the authority to sell was intended to be unlimited as to time. The word " sooner," which precedes the words conferring the power, would seem to refer to the possible necessity for an early sale, and was not probably designed to qualify the power. The testator did not intend that the property should be sold while the wants or convenience of his family required that they should occupy it; unless the sale should become necessary. But he intended to give positive directions that it should be sold at some period. This inference is much strengthened by a subsequent provision in the will. In that provision the testator directs that when the farm is sold the money shall be divided; and then proceeds to give various portions of it absolutely to his widow and several of his children. This clause, if it stood alone, would, by necessary implication, give a general power to sell. The executors are

Dorland v. Dorland.

not named in that part of the will as the donees of the power : but the consequent gift of the avails in the shape of legacies necessarily devolves it upon them. And such is the rule. (*Sugd. on Powers*, 167. 4 *Hill's Rep*. 500.) The testator gives unequal sums to the distributees ; evincing a disposition to make an unequal division of his property. Should there be no sale, and the land should descend to the heirs, that intention, which he no doubt thought was founded upon sufficient reasons, would be entirely defeated. Indeed, should there be no sale, there would be no disposition at all of the principal part of the estate. It is evident, however, that no such thing as intestacy, as to any part of the property, was designed. It is also apparent, from the provision in the codicil that the widow and minor children should have the privilege of remaining on the farm until the youngest child should be of age, unless the executors should find it necessary to sell the same sooner, as expressed in the will, that the testator did not intend to limit the power of sale, but that he supposed that such sale might take place at any time during the minority of the youngest child, although it might be after the third of his minor children should attain the age of ten years, as expressed in the will. If it extended beyond the latter period, there was assuredly no limitation as to time. It is well settled that no formal set of words is requisite to create or reserve a power. It is sufficient if the intention be clearly declared. The language of the testator is to be construed equitably and liberally in furtherance of the intention. (4 *Kent's Com*. 319. *Doug*. 293. 3 *East*, 441. *Jackson* v. *Veeder*, 11 *John*. 169.)

As the youngest child has now attained the age of twenty-one years, it is clearly the duty of the executors to proceed immediately to execute the power conferred upon them. They must be directed to sell the lands, and the sale may be public or private, as they may deem either the most conducive to the interests of those who are entitled to the proceeds. The avails must be distributed agreeably to the directions contained in the will.

The defendants Hoag and wife, are entitled to the five hun-

Dorland *v.* Dorland.

dred dollars bequeathed to Mrs. Hoag, as the testator's widow, and the executors must pay that amount to them; first deducting, however, the one-fifth part of the amount reported to be due from her and her children on account of the personal estate used by them. And those defendants must execute a written declaration, in such form as shall be approved by Mr. Cole, that the same is received in lieu of her dower, and in full satisfaction of the claims which she had against the testator's real estate. The gift of that sum is absolute. The direction to the executors to put the money at interest, for her support, does not in any manner revoke or qualify the donation. It merely relates to the investment, and, as it is inconsistent with the absolute title before given to her, it is null and void. There can be no valid qualification subsequently attached to a fee simple absolute in lands, or a full title to personal property.

The four younger children are entitled to two hundred and fifty dollars each; the first three under the will, and the youngest under the codicil. The executors must pay that sum to each, deducting from their respective shares the one-fifth part of the amount reported due from them on account of the personal estate.

The testator's son, Andrew Dorland, is entitled to four hundred and thirty dollars out of the avails of the real estate, should that sum be left after payment of the legacies to the widow and her children. There is, in terms, a qualification to his legacy, which would seem to make it dependent upon there being any money on hand after the testator's affairs should be settled. That undoubtedly refers to the payment of the several legacies previously given. His is to be postponed to those given to the widow and her children. As there will be sufficient to pay all those preferred legacies, the qualification will not apply. As to the direction that the executors shall pay him such part as may appear proper to them, that is inconsistent with the absolute gift, and is therefore void. The executors must pay him the full amount, if there should be sufficient for that purpose.

The residue of the testator's estate, after deducting therefrom

Dorland v. Dorland.

the costs of the several parties in this suit, must be divided in equal portions between the testator's children who are living, and the next of kin of those who have died, per stirpes, and not per capita. Each surviving child is entitled to the thirteenth part, and the next of kin of each deceased child is also entitled to the same part, of such residue. The question whether the children of the testator took an immediate vested interest in the legacies which they were entitled to receive on the final distribution of the estate, was waived by all the parties on the argument; but I conceive that a decision of that question is necessary for the protection of the executors. As the postponement of the sale and of the payment of the avails was for the benefit of the widow and minor children, and not from any considerations personal to the legatees generally, they took a vested interest immediately after the decease of the testator, and consequently the estates of those who are dead were transmissible to their representatives.

The debts due from the testator's sons, John, Isaac and Seaburn, including the interest up to the time of the distribution, not exceeding the amount of their respective shares, must constitute a part of the estate to be divided. If the debt of either falls short of his share, the difference must be paid to him if living, or, if dead, to his next of kin. If the indebtedness should exceed the share of either, it becomes extinguished by the terms of the will, but in that case, or if it should be equal to his share, he or the next of kin will not be entitled to any part of the fund.

It is manifestly proper, and I shall direct, that the costs of all the parties shall be paid out of the residue of the testator's estate, after the payment of the legacies particularly specified, and before any final division shall be made.