# N. Y. SUPERIOR COURT.

CAMBRIDGE LIVINGSTON and another, executors of &c., of WASHINGTON MURRAY, deceased, agt. ELIZA B. W. MURRAY.

Where the *will* of the testator, after directing the payment of his debts, and of some specific legacies, devised and bequeathed the residue and remainder of his estate, *real* and personal, to his executors, in trust, to *invest* the same, and pay the income to his wife during life, and at her death, the balance to his heirs-at-law :
*Held,* that a *power to sell* and convey the *real estate* of the testator by the executors is fairly to be implied, and that a conveyance from them, under such implied power, will carry a good title to the purchaser.

*Special Term, April,* 1869.

THIS action was brought to obtain a judicial construction of the will of Washington Murray.

The will is dated May 15, 1866. After directing the payment of debts, and making some specific bequests, the will devises and bequeaths as follows:

" I give, devise, and bequeath to Cambridge Livingston and Theodore B. Bronson, the executors of this my last will and testament, hereinafter nominated and appointed, all the rest, residue, and remainder of my *real* and personal estate, of what nature and kind soever, in *trust*, to invest the same in real or state securities, or on bond and mortgage, or in such productive securities as to them may seem meet, and after deducting all necessary expenses, to pay the income thereof to my said wife, Eliza B. W. Murray, during her natural life, taking her separate receipt in full discharge of all such payments.

" At the decease of my said wife, if there should be any issue of my body begotten living, I direct my said executors

to divide my property, share and share alike, equally among such issue. If there should not be any such issue then living, I direct my said executors to pay the sum of five hundred dollars to each of my nephews and nieces, and to my sister Anna, five thousand dollars, and the balance to my heirs-at-law."

The testator died in September, 1867, without issue, leaving a widow, Eliza B. W. Murray, and brothers, sisters, nephews, and nieces, some of whom are infants. All were summoned in the action, and have appeared by attorney or guardian.

The estate left by the testator consisted of real and personal. The real estate is wholly unproductive, and is subject to taxes and assessments, which can be paid only out of the personal estate.

M. S. BIDWELL, & G. F. STRONG, *for plaintiffs.*

J. S. CADWALLADER, *for defendants, and guardian ad litem of infants.*

MONELL, J.—The question presented for decision in this case is, whether the executors have power to convey the real estate. No express power is given. The real property of the testator was devised to the executors, in trust for the purposes expressed in the will, with a remainder over which immediately vested in the heirs-at-law, expectant upon the estate given to the executors during the widow's life.

A power to convey may, in some cases, be implied. The general rule is, that if a sale of the real estate is necessary to carry out the purposes of the testator, the power to make the sale will be given by implication, as otherwise the intention of the testator might be defeated. In those cases it will be presumed that the testator, having in view a duty imposed upon the executors of his will, intended that they

should sell his real estate, and omitted, through mistake or otherwise, to confer express power.

In *Gourg* agt. *Eemery*, (16 *Pickg.*, 107,) the testator devised the residue of his real and personal estate to the cause of Christ, for the benefit and promotion of true evangelical piety and religion, and directed the executors " to collect all the above last-specified property as soon as can be done consistently, without sacrificing too much by forcing the sale thereof in an improper manner, * * * and pay over the same to the Rev. John Todd, * * * to be by them appropriated to the cause of religion, " as above stated." Chief Justice SHAW said the rule is, if a testasor, having a right to dispose of his real estate, directs that to be done by his executors which necessarily implies that the estate is first to be sold, a power is given by implication, to the executors, to make such sale, and execute the requisite deed of conveyance. It was held to have been the clear intent of the testator to appropriate the whole residue of his estate to religious and charitable purposes; and that he further intended, in the terms used, that his executors should sell his real estate, and apply the proceeds as directed.

In *Winston* agt. *Jones*, (6 *Ala. R.*, *N. S.*, 550,) after expressing a desire to do equal justice to all his children, and to give each an equal portion of his property, and having given to his children, as they became of age or were married, about an equal portion, except that, in addition, he had given to one daughter more than to his other children, the testator directed that there should be added to the residue of his estate the whole value of such additional part, and the whole should then be divided, and paid over by the executors. It was held that the executors had power, by implication, to sell the real estate. The court said, no precise words are necessary for the execution of a power, if the intention to confer the power is apparent, to enable the executor to execute the trusts of the will, the power will be implied.

The power will also be implied where the devise is to executors, with directions to pay debts. (*Blatch* agt. *Wilder*, 1 *Atk.*, 419, *and note* 1; 1 *Shep. Touch.*, 43; *Sug. on Pow.*, 115). So a general direction to sell land for the purpose of paying debts, where the proceeds are to be applied by the executors, will imply a power to sell (*Tilden* agt. *Hyde*, 2 *Sim. & S.*, 238). In *Trustees of Putnam Free School* agt. *Fisher*, (30 *Maine*, 523,) the devise was to the executors, in trust, to accumulate, by adding the interest or income to the principal, and a power-to sell the real estate was implied. Without quoting from any other case, I will merely refer, in support of the general rule I have stated, to 2 *John. Ch. R.*, 252; 4 *Kent Com.*, 319; 4 *Hill*, 492; 2 *Barb.*, 63; 8 *Id.*, 18; 4 *Id.*, 626; 5 *N. Y. Rep.*, 139; 20 *Id.*, 366; 1 *Redfield*, 323; 2 *Sanf.*, 512).

In the case before me, the testator, after directing the payment of his debts, and of some specific legacies, devised and bequeathed the residue of his estate to his executors, in trust, to *invest* the same, and pay the *income* to his wife during life.

To carry into effect the apparent design of the testator, it would be necessary to convert the real into personal, as in no other way could the estate be *invested* in any of the securities mentioned in the will; "real" securities, being such as are secured by real estate (3 *Atk.*, 808; 16 *Jurist*, 255,) and not real estate itself, (*Hill on Trustees*, 368 *n.*; 10 *Beav. R.*, 456). Had the testator intended that his real estate should not be sold during the life of his wife, he would have made the devise, not to his executors, but to the remaindermen, and would have merely athorized his executors to collect the rents and profits. But it is quite clear, I think, that the testator intended that his real estate should become a part of the investment, which he directed should be made, and it therefore follows, that he must have contemplated that a sale would be required to effectuate such purpose.

. By statute, lands devised to executors to be sold, where the trustees are not also empowerd to receive the rents and profits, vests no estate in the executors. (1*R. S.*, 729, § 56). But the trust is valid as a power, and the land passes to the heir, subject to the execution of the power. So that the devise to the executors, in this case, was quite unnecessary, if it was not intended that the real estate should become part of the investment named in the will. The plain import of the devise, coupled with the direction to *invest*, was to make it valid as a power; and to enable the executors to execute the trust, it must be presumed that the testator meant to authorize a sale.

If there was any reasonable doubt of the necessary implication of power, derived from the devise to the executors and the direction to *invest*, it would be removed by the subsequent directions in the will, to dispose of the testator's property upon the death of his wife. The direction is, after paying certain specific legacies, to *pay* the balance to his heirs-at-law—(this would be an inapt word for the testator to use, if he had intended that the real estate should not be · sold)—and should be conveyed to the heirs-at-law, " share and share alike," on the death of his wife. Hence, to enable the executors to "*pay*" the estate to the heirs-at-law, it must be changed into money, and the necessary power to do that must be presumed to have been contemplated by the testator. (*Lippencott's Exrs.* agt. *Lippencott,* 4 *C. E. Green, N. J.*).

In ascertaining the intentions of a testator it is alway proper to look at any extrinsic facts or surrounding circumstances which may be supposed to have had an influence in the disposition of his estate. (*Wolf* agt. *Van Nostrand,* 2 *Coms.*, 436).

The real property of the testator was all wholly unproductive and subject to taxes and assessments, the payment of which will largely reduce the income from the personal estate. And it is, perhaps, doubtful if the executors have

the right to employ the personal estate for any such purpose. At any rate, it will deprive the widow of a large portion of the income which the testator, it is fair to assume, intended she should derive from his estate, especially as the interest she takes under the will is for life, and only in the income.

The provisions in the will in question bring the case very clearly within the rule of implied power. The real estate is given to the executors; they are to invest the whole estate in certain specified securities; they are to pay over the income to the widow during life, and, at her death, the whole balance is to be *paid* to the heirs-at-law. To do all this the real estate, it is quite clear, must be sold, and sold by the executors on whom devolve the trusts named in the will. My conclusion is, that a power to sell and convey the real estate of the testator is fairly to be implied, and that a conveyance from them, under such implied power, will carry a good title to the pnrchaser.