*In re* Louis Curtis *et al.*, for an Opinion.

NEWPORT—JANUARY 31, 1905.

Present: Tillinghast, C. J., Douglas and Dubois, JJ.

(1) *Wills. Trustees. Power of Sale.*

A trust estate consisting of personal property and one lot of land with a building thereon was held by the trustees under the following devise: "It shall

be lawful for the trustees to vary and change from time to time as they may think expedient investments existing under this will."

"In case of the death of any granddaughter that is married, if she leaves issue, her portion shall be paid to the guardian of her child to be held in trust for its benefit":—

*Held,* following *Ames* v. *Ames,* 15 R. I. 12, that words imposing duties upon a trustee that he can not perform without a sale will necessarily create a power of sale in the trustee.

*Held,* further, that a power to "vary and change" investments involves a power to sell the old and purchase new.

(2)   *Wills.   "Investments."*

*Held,* further, that the word "investments" was used in the will as including all the estate of the testator, and was not limited to personal property.

PETITION for construction of a will.

DOUGLAS, J.   This petition is brought by the trustees under the will of Richard S. Greenough, and certain parties who have agreed with them to purchase a piece of real estate devised to said trustees by said will, to obtain a construction of the same.

The trust estate consists of considerable personal property and one lot of land in the city of Newport containing about 2,600 square feet, upon which is a studio building which was formerly used by the testator but has long been unoccupied and unproductive.   The land and building are estimated for taxation at $2,300, and the agreement of sale between the parties is for $2,600.   Doubts having arisen as to the power of the trustees to sell, the parties have agreed in stating a case for the decision of this court.

The will gives the bulk of the testator's estate to trustees for the benefit of his three grandchildren, and in defining the powers of the trustees provides: "And I do hereby declare that it shall be lawful for the trustees hereby appointed, and other, their successors, to vary and change from time to time as they may think expedient, investments existing under this my will, provided that all moneys liable to be invested, be invested in such manner and on such security as is required by the statutes of Massachusetts concerning the investment of trust funds."

Another provision is: "In case of the death of any granddaughter that is married, if she leaves issue, her portion shall

be paid to the guardian of her child or children, to be held in trust for its or their benefit," &c.

(1)    The rule of law applicable to a case like this is approved by this court in *Ames* v. *Ames*, 15 R. I. 12, as laid down in 2 Perry on Trusts, section 766, where it is said: "No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he can not perform without a sale, will necessarily create a power of sale in the trustee."

It can not be doubted that the power to "vary and change" investments involves the power to sell the old and to purchase new. This is the obvious and common method of exercising such a power, and the testator must have contemplated that such should be the action of the trustees when they considered a change expedient. *Purdie* v. *Whitney*, 20 Pick. 25; *Boston Safe Deposit & Trust Co.* v. *Mixter*, 146 Mass. 100; *Harvard College* v. *Weld*, 159 Mass. 114; *First Nat'l Bank* v. *Lee*, 66 S. W. Rep. 413.

The only debatable question in the case is whether this piece of real estate was embraced by the testator in the word "investments."

"To invest means to lay out money or capital in business with the view of obtaining an income or profit, as to invest money in bank stock; to employ for some profitable use; to convert into some other form of wealth, usually of a more or less permanent nature." 17 Am. & Eng. Ency. L. 2nd ed. 420.

An investment is some form of property into which money has been put with the intention of holding it for gain or increase or for permanent safe-keeping. In its common meaning the word "investment" involves the idea of intended profit, and ordinarily the word implies a certain measure of permanence in contrast to a speculation or temporary venture. A temporary deposit of money subject to call, though some interest is received for it, is not an investment of the money in the usual sense of the word (*Law's Estate*, 144 Pa. St. 499, 507), though it has been held to be so in a broader sense. *Jennings* v. *Davis*, 31 Conn. 134, 143. The purchase of a note or of corporate

stock or of real estate yielding rent or to be used in business or to be held for an expected rise in value is an investment in the strictest sense. *Una v. Dodd*, 39 N. J. Eq. 173, 186; *Savings Bank* v. *Barrett*, 126 Cal. 413 ; *Col. Savings Bank* v. *Evans*, 12 Col. App. 334, 342; *People* v. *Utica Ins. Co.*, 15 Johns. 358, 392; *Lyon* v. *Zimmer*, 30 Fed. Rep. 410.

(2)      As applied to the property of a testator, unless qualified by the context, the word "investments" may include his whole estate except cash on hand. It is said by Selden, J., in *Parker Mills* v. *Commissioners*, ·23 N. Y. 242: "A sum is invested whenever its amount is represented by anything but money." In common language we say that a decedent left his property invested in houses and lands, bonds and stocks, applying the word indiscriminately to all the forms into which he had put his money. We think the word "investments" is used in this will as including all the estate of the testator which came to the trustees. There is nothing to show that it was intended to apply to personal property rather than to real estate. The studio which he had occupied in the practice of his profession was a business investment as truly as the warehouse of a merchant or the office building of a physician would be.

Again, the provision for the distribution of the estate in portions includes this parcel as well as the personal property, and the word "paid," as designating the mode of distribution in a certain contingency, implies that the testator had in mind not land, but money or its equivalent, as the ultimate form which his estate should have when the time for division came. This lot of land, on account of its size and the character of the building upon it, is incapable of division in specie, and must be sold to be distributed in the form of money. Similar directions to appropriate or divide have been held to authorize the sale of real estate. *Livingston* v. *Murray*, 39 How. Pr. 102; *Going* v. *Emery*, 16 Pick. 111-2; *Ames* v. *Ames, supra; Lippincott, Exr.*, v. *Lippincott*, 19 N. J. Eq. 121-2.

It is argued by counsel for the vendees that the provision as to new investments is restrictive of the power of the trustees as to what they may sell, and confines them simply to the investment of money on hand, but the plain meaning of the

clause is only that the trustees shall be restricted as to what they shall buy. The only investments which they can "change and vary," in the first instance, are investments which came to them at the death of the testator. If the testator's estate as he left it can not be changed, no investments can be made by the trustees at all. To procure "moneys liable to be invested," some portion of the estate as left by the testator must be sold; for the whole income of the estate is disposed of by the will.

We conclude, therefore, and so advise the trustees, that they have an implied power under the provisions of the will to sell this parcel of real estate.

*Darius Baker, William P. Sheffield, Jr., and William R. Harvey,* for the parties.