---

### SALISBURY et al. v. RYAN.

(Supreme Court, Appellate Division, First Department.   June 23, 1905.)

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—CONVEYANCE OF DOUBTFUL TITLE.

An agreement to purchase property from executors will not be specifically enforced at the suit of the executors where the terms of the will under which they act are such that it is doubtful whether the executors have power to sell the land at all, and whether, if they can sell it at all, they can do so at the time of the execution of the agreement, and where remaindermen under the will, who could question the sale if it should be made, are not parties to the suit for specific performance, and will not be bound by any decision rendered therein.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 553, 557;  vol. 44, Cent. Dig. Specific Performance, §§ 46, 54, 347.]

Submission of controversy on agreed facts by George B. Salisbury and others, as executors of Henry E. Salisbury, deceased, against James P. Ryan.   Judgment for defendant.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

James L. Bishop, for plaintiffs.
William D. Gaillard, for defendant.

O'BRIEN, J.   The plaintiffs, as executors of Henry E. Salisbury, demand the specific performance of a contract by which the defendant agreed to purchase of them certain real estate.   The defendant claims that the plaintiffs cannot convey a marketable title thereto, because no power of sale is given them as executors under the will, and he demands the return of the amount paid by him on the purchase price of $3,000 and the expenses of searching the title.   The sole question therefore presented by the submission is whether the plaintiffs can convey a marketable title, and this depends on the terms of the will under which they assume to act in contracting to sell the property.   That will, after a specific bequest of $20,000, provides:

"All the rest, residue and remainder of my estate both real and personal, I give, devise and bequeath to my executors hereinafter named, and the successor or successors of them or either of them, in trust, nevertheless and for the following uses and purposes:  To invest the same and keep the same invested and to receive the rents, issues and profits thereof and to pay over the same in semi-annual payments to my aforesaid wife for and during her natural life or as long as she shall remain unmarried, but if my said wife shall

remarry then and in that case I direct that my said trustees shall upon the said remarriage of my said wife pay over absolutely to each of my children then surviving the sum of Twenty thousand dollars ($20,000) and to the issue then surviving of any deceased child the said sum which its parent would have taken if, then surviving, the distribution among said issue to be per stirpes and not per capita."

This is the only portion of the will having any bearing upon the authority of the executors to sell real property, and it is therefore apparent that a doubtful question of law is presented as to whether they have such power. To them is devised and bequeathed in trust all the rest, residue, and remainder of the estate, both real and personal, which they are directed to invest and keep invested, and in case the widow remarries they are then to pay over absolutely to each child the sum of $20,000. No direct power to sell the real estate is given them by the will, and, if they possess it at all, it is only from implication arising either from the provision which directs them to invest the real and personal estate, or from the fact that a sale of the real property may be necessary to carry out the scheme of the will in case the widow remarries. It is possible that the court would hold that the direction to invest the real and personal estate would impliedly give the executors power to sell the real property (Livingston v. Murray, 39 How. Prac. 102; McCready v. Met. Life Ins. Co., 83 Hun, 526, 32 N. Y. Supp. 489, affirmed 148 N. Y. 761, 43 N. E. 988; Byrnes v. Baer, 86 N. Y. 210), especially if it should be necessary to do so upon the remarriage of the widow in order to effectuate the intention of the testator to make a payment in that event of $20,000 to each of his children (Cahill v. Russell, 140 N. Y. 402, 35 N. E. 664). But it is not necessary, nor do we deem it advisable, to pass upon that question at the present time. The language of the will is such, as already indicated, that a doubtful question of law is presented as to whether any power of sale exists, and, if it exists at all, whether it can be exercised at the present time, when it is not necessary to convert real property into cash in order to pay the specific bequest, and when the contingency calling for a distribution among the children has not yet happened. The remaindermen under the will, who have the right to question the sale if it should be made, are not parties to this proceeding, and will not be bound by any decision which we may render. In this situation, with a doubtful question of law existing as to the validity of any title which the executors may assume to convey, the defendant will not be compelled to accept the property.

The law governing cases of this character is accurately stated by Judge Andrews in Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905, as follows:

"The question presented to the court on an application to compel a purchaser on a judicial sale, who raises objections to the title tendered, to complete the purchase, is not the same as if it was raised in a direct proceeding between the very parties to the right. Where all the parties in interest are before the court, and the court has jurisdiction to decide, they are concluded by the judgment pronounced, so long as it stands unreversed. * * * But the court stands in quite a different attitude where it is called upon to compel a purchaser to take title under a judicial sale, who asserts that there are outstanding rights and interests not cut off or concluded by the judgment

under which the sale was made. The objection may involve a mere question of fact, or it may involve a pure question of law upon undisputed facts. In either case it may very well happen that the question is so doubtful that, although the court would decide it upon the facts disclosed, in a proceeding where all the parties interested were before the court, nevertheless it would decline to pass upon it in a proceeding to compel a purchaser to take title, and would relieve him from his purchase. The reason is obvious. The purchaser is entitled to a marketable title. A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding."

This is a leading case upon the subject, and the law as there stated has been invariably followed in later decisions. Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966; McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527; Blanck v. Sadlier, 153 N. Y. 551, 47 N. E. 920, 40 L. R. A. 666; Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527; Moot v. Business Men's Inv. Ass'n, 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666; Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196; Felix v. Devlin, 90 App. Div. 103, 86 N. Y. Supp. 12; Pell v. Pell, 65 App. Div. 388, 73 N. Y. Supp. 81; Marks v. Halligan, 61 App. Div. 179, 70 N. Y. Supp. 444; Paolillo v. Faber, 56 App. Div. 244, 67 N. Y. Supp. 638.

In Greenblatt v. Hermann, supra, it is said:

"The title tendered need not in fact be bad in order to relieve him (the vendor) from his purchase, but it must either be defective in fact, or so clouded by apparent defects, either in the record or by proof outside of the record, that prudent men, knowing the facts, would hesitate to take it."

And in McPherson v. Schade, supra, the court said:

"A purchaser ought not to be compelled to take property the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value. If it may be fairly questioned, specific performance will be refused."

It is apparent that this title is not free from reasonable doubt. A doubtful question of law exists concerning it, and all the parties who have a right to be heard upon that question are not before the court. No judgment which we can render at this time will be binding upon the remaindermen under the will, and for these reasons the plaintiffs cannot convey a marketable title, and the court will not decree a specific performance of the contract of sale.

Judgment must therefore be for the defendant, with costs. All concur.