[No. 16047.  Department One.  November 1, 1920.]

LUMBERMEN'S INDEMNITY EXCHANGE, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

TAXATION (70-1)—LEVY AND ASSESSMENT—INSURANCE COMPANIES—PREMIUM TAX—RESERVE—"BONDS OF STATE". United States Liberty Loan bonds are not "bonds of this state" within the meaning of Rem. Code, § 6059-26, requiring of insurance companies a cash reserve fund in a certain amount in certain specified securities.

SAME (70-1). Where an insurance company has available cash, or its equivalent, in a larger amount that the cash reserve which it claims was necessary for the proper conduct of its business, it cannot claim that Liberty bonds bought and held by the company are necessarily a part of its required cash reserve governing the rate of taxation of its premium under Rem. Code, § 6059-26.

SAME (70-1)—CASH RESERVE—"INVESTMENT". While a purchase of Liberty bonds by an insurance company as an asset "available for investment" depends to a certain extent upon the intent of the company, under the accepted definitions of "investment" the purchase must have been made with the idea of obtaining a profit, and if the contrary appears, the same may have been used as a necessary portion of its cash reserve, under Rem. Code, § 6059-26.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered December 8, 1919, upon sustaining a demurrer to the complaint, dismissing an action to recover a tax paid.  Reversed.

[1]Reported in 193 Pac. 217.

*Donworth, Todd & Higgins,* for appellant.

*The Attorney General* and *John H. Dunbar, Assistant,* for respondent.

MACKINTOSH, J.—The appellant having, under protest, paid to the respondent a premium tax, which it claims to have been an overpayment, attempts in this action to recover the same. The complaint alleges that, during the year 1918, the appellant, a mutual fire insurance company, collected or contracted for premiums on fire risks in the sum of $253,873.04, and that the state insurance commissioner imposed upon and collected from the appellant two and one-quarter per cent of that amount, or $5,712.14. Appellant paid this amount under protest, claiming that it should have been taxed only one per cent, or $2,538.73, for the reason that more than fifty per cent of its assets were invested in bonds or warrants of the state or in first mortgages on real property within the state. The appellant sets out a list of the assets as they appeared at the end of the year 1918, as follows:

| | |
|---|---:|
| Cash on Deposit | $29,728.20 |
| Liberty Loan Bonds of United States | 37,500.00 |
| War Loan Bonds of the Government of the Dominion of Canada | 1,908.70 |
| First mortgages upon improved real estate within the State of Washington, receivable | 20,000.00 |
| Re-insurance collectible | 33,888.15 |
| Accrued Interest | 254.09 |
| Premiums in course of collection | 101,156.85 |
| Total | $224,435.99 |

The complaint then alleges that the appellant, in the ordinary course of its business, writes insurance cov-

ering single fire losses, by policies varying in amount from $20,000 to $50,000; that, in order to transact its business, the appellant is required to have on hand cash or its equivalent in the amount of not less than $50,000, in order to safely and properly conduct its business as a mutual fire insurance company; that "such cash reserve is not an asset of the company which is available for investment, but it is at all times held in reserve for the immediate payment of losses under policies of insurance issued by the appellant."

During the year 1918, the appellant purchased out of its cash reserve $37,500 worth of Liberty Loan Bonds of the United States. This purchase was made for patriotic reasons; and it is alleged that these bonds have always been held as part of the appellant's cash reserve, these bonds being "bonds of the state," within the meaning of the insurance code, and being held as the equivalent of cash. The insurance commissioner would not consider these bonds as part of the cash reserve, and collected taxes at the rate of two and one-quarter per cent. To this complaint, a demurrer by the respondent was sustained, and the appellant not pleading further, judgment was entered dismissing the action, from which this appeal is prosecuted.

Section 6059-26, Rem. Code, provides that all insurance companies shall pay a tax at the rate of two and one-quarter per cent on all premiums collected or contracted for, provided:

"—that if any such company, corporation or association shall have fifty per centum or more of its assets invested in any bonds or warrants of this state, or bonds or warrants of any county, city, or district within this state, or in taxable property within this state, or in first mortgages upon improved real estate

within this state, then the tax shall be but one per centum on the amount so collected."

It is conceded by the respondent that the term "assets," as used in this proviso, means "assets available for investment in securities of a character such as those therein mentioned." It is agreed that the following items are not assets available for investment, viz.:

| | |
|---|---|
| Cash on deposit | $29,728.20 |
| Reinsurance collectible | 33,888.15 |
| Accrued interest | 254.09 |
| Premiums in course of collection | 101,156.85 |

and that the following are assets available for investment:

| | |
|---|---|
| War Loan Bonds of the Government of the Dominion of Canada | $1,908.70 |
| First mortgages upon improved real estate in the State of Washington | 20,000.00 |

which leaves for determination the character of the item of Liberty Loan Bonds in the sum of $37,500.

If this is an asset "available for investment," the appellant would not be entitled to the benefit of the proviso of the statute, not having fifty per cent of its assets available for investment invested as there provided. If this item, however, is a part of the cash reserve, it would be entitled to the benefit of the proviso. The appellant presents two arguments in favor of the latter result; the first being that the purchase of these Liberty Loan Bonds was made as a part of its reserve, they being considered a quick asset or the equivalent of cash, and that the purchase out of its cash reserve was not as an investment, but purely as a duty to the government of the United States, and secondly, that, in any event, these Liberty Loan Bonds are bonds of the state within the meaning of § 6059-26.

Disposing of this latter contention, it is sufficient to say that a bond upon which the state is not liable for payment cannot be a bond of the state. The people of this state, as citizens of the state, are not called upon to pay, nor can they be taxed to pay, these bonds, nor is their credit pledged in security of them, nor are the assets of the state pledged for their payment, and as there is no obligation of any kind on the people of this state, or the state itself, to pay these bonds, they are not bonds of the state.

Passing to the first question presented, we find that the appellant's complaint is that it was necessary for it to have on hand cash in an amount not less than $50,000, and that it was its intention, in purchasing the Liberty Bonds, to hold such bonds as a part of this cash reserve, it being considered they were a quick asset or the equivalent of cash, and that the purchase was made in answer to a call by the Federal government for the investment of all available funds in Liberty Bonds, and that the bonds had been held as part of the cash reserve with the idea of keeping them temporarily, and that the purchase was not made for the purpose of obtaining a profit, or with the idea of retaining ownership beyond the time that they would be used as part of the cash reserve, but as responsive to a patriotic duty; that the appellant could have retained the money with which these bonds were purchased as a part of its cash reserve, and that the money so used was not available for investment at the time of its use, and should not now be treated as an invested asset, for the reason that the amount of that money, was to be held as a part of the cash reserve to pay its current expenses and losses. The answer made to this position is that there appears in the list of assets an item of deposits in course of collection

amounting to over $100,000, which are collectible from day to day, which could, if necessary, have been used in paying off current losses; so that the appellant, upon its own showing, had available cash, or its equivalent, in a larger amount than the cash reserve which it claims was necessary for the proper conduct of its business. If this be true it could not be determined upon demurrer. It is further argued that the intention with which the bonds were bought cannot determine whether the purchase was an investment or not, and that the determination of that question depends upon what really was done; that the bonds were not cash nor the equivalent of cash, any more than any other security which the company might have purchased with the intention that the property purchased might be held only temporarily and might be sold conveniently; that the fact remains that money in the cash reserve was actually taken from the cash reserve and put into securities, and that the determination of whether that security remained a portion of the cash reserve or had passed into the classification of investment is to be determined by the consideration of what constitutes an investment.

In the first place, whether a purchase of securities is an investment or not does, to a certain extent, depend upon the intention of the purchaser. The argument of the state is fallacious when it assumes that the intention with which the purchase is made has no bearing on the question of whether the purchase results in an investment or not, for, as we will see when examining the definitions of the term "investment," the question of intention has material weight in determining whether a given purchase comes within its scope. If the purchase of these securities falls within the well recognized definition of investment, the asset

used in their purchase was an asset "available for investment," made so by the act of the party itself.

Investment has been defined in *In re Curtis,* 26 R. I. 580, 60 Atl. 240, as follows:

"An investment is some form of property into which money has been put with the intention of holding it for gain or increase or for permanent safe-keeping. In its common meaning the word 'investment' involves the idea of intended profit, and ordinarily the word implies a certain measure of permanence in contrast to a speculation or temporary venture. A temporary deposit of money subject to call, though some interest is received for it, is not an investment of the money in the usual sense of the word. . . ."

17 Am. & Eng. Ency. Law (2d ed.), p. 420, defines the word as—

"To 'invest' means to lay out money or capital in business with the view of obtaining an income or profit, as to 'invest' money in bank stock; to employ for some profitable use; to convert into some other form of wealth, usually of a more or less permanent nature."

In *People ex rel. Parker Mills v. Commissioners of Taxes,* 23 N. Y. 242, it was held that money is invested whenever it is represented by anything but money.

In 23 Cyc. 348, investment is defined:

"As used in connection with money or capital, to give money for some other property; to lay out money for some other kind of property, usually of a permanent nature; literally, to clothe money in some thing; to lay out money in some permanent form so as to produce an income; to lay out (money or capital) in business with the view of obtaining an income or profit; to place money so that it will yield a profit."

The Century Dictionary defines the word "invest" as follows:

"To employ for some profitable use; convert into some other form of wealth, usually of a more or less

permanent nature, as in the purchase of property or shares, or in loans secured by mortgages, etc. . . . in lands or houses or in bank stock, government bonds, etc.''

''The accepted definitions of that term, as well as its derivation, involve the idea of the *clothing* or *investiture* of the fund with new and different attributes.'' *Fidelity & Deposit Co. v. Freud,* 115 Md. 29, 80 Atl. 603.

Throughout the definitions there seems to run the requirement that, in order to constitute an investment, the purchase of the security must have been made with the idea of obtaining a profit, and that the purchase must partake more or less of a permanent character. According to the allegations of the complaint, both of these essentials are lacking in the purchase of the Liberty Bonds. It is alleged that they were not purchased with the expectation of a profit, and that they were not purchased with the idea of being more than a temporary deposit of the money. These were matters which, if the appellant were able to prove them, would take the purchase of these Liberty Bonds out of the category of investment, and leave the money used in their purchase as a part of the cash reserve. It is also a matter of proof as to whether the amount used in this purchase was, as alleged in the complaint, a necessary portion of such cash reserve. For these reasons, the demurrer should not have been sustained.

The judgment will be reversed, with directions to overrule the demurrer and allow the respondent to answer.

HOLCOMB, C. J., BRIDGES, FULLERTON, and PARKER, JJ., concur.