[No. 18135.   Department One.   November 7, 1923.]

·AUTOMOBILE UNDERWRITING AGENCY, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

INSURANCE (1)—CONTROL AND REGULATION—LICENSE OR TAX—CASH RESERVE—"INVESTMENT." In Rem. Comp. Stat., § 7071, which provides that the tax of 2¼% on premiums collected by an insurance company shall be reduced to 1% in case the company has 50% or more of its assets invested in state or municipal bonds, "assets" means "assets available for investment;" and does not include a cash reserve reasonably necessary to meet its losses and carry on its business.

SAME (1)—LIBERTY BONDS HELD AS CASH. Such reserve may be held in part in liberty bonds quickly convertible into and taken as cash, purchased out of a sense of patriotic duty and not as an investment.

SAME (1)—INSURANCE PREMIUMS AS CASH. Insurance premiums in the course of collection, due in ninety days, are not the equivalent of cash, in view of the continuing nature of such premiums and the increasing liabilities upon policies and cost of operation.

SAME (1)—CASH RESERVE—REASONABLE AMOUNT. The sum of $50,000 will not be held an unreasonable amount for a cash reserve to meet the losses and expenses of an automobile insurance company, which had but recently commenced business, where men of honesty and business experience composing its managing board, in the exercise of their best judgment, determined that such sum was necessary.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 27, 1923, upon findings in favor of the defendant, dismissing an action to recover a state tax paid on insurance premiums. Reversed.

*Reynolds, Ballinger & Hutson,* for appellant.

*The Attorney General (John F. Garvin,* of counsel), for respondent.

MACKINTOSH, J.—In May, 1918, the appellant began the writing of insurance on automobiles, at that time

[1]Reported in 219 Pac. 872.

being the only local company engaged in that form of business. The report of appellant for the year 1919, made on December 31 of that year, showed that the appellant had on hand $26,500 in cash, $22,000 in liberty bonds, United States treasury notes and war savings stamps, and had outstanding premiums in the course of collection in the sum of $32,000, which would fall due in ninety days.

The appellant was called upon to pay to the state, under Rem. Comp. Stat., § 7071 [P. C. § 2933], a tax of 2¼% on all the premiums collected for the year 1919, and this action is for the purpose of recovering the difference between that tax and the 1% tax mentioned in the latter part of that section:

"And provided, further, that if any such company, corporation or association shall have fifty per centum or more of its assets invested in any bonds or warrants of this state, or bonds or warrants of any county, city, or district within this state, . . . . . or in first mortgages upon improved real estate within this state, then the tax shall be but one per centum on the amount so collected."

It is the claim of the appellant that, during the year 1919, it did not have assets which could be invested in any of the securities mentioned in the section, while it is the contention of the state that the appellant had such assets.

In *Lumbermen's Indemnity Exchange v. State,* 113 Wash. 82, 193 Pac. 217, this court defined "assets" as used in the statute to be "assets available for investment." The question, therefore, is whether the appellant in 1919 had any assets available for investment which would make it necessary, in order to avail itself of the lower tax rate, to have fifty per cent thereof invested in securities mentioned in the section.

With a very short experience in this business, the

managing officers of the appellant, in the exercise of their best judgment, determined that, during the year 1919, it was necessary for the appellant to have a cash reserve of at least $50,000 in order to meet its losses and to carry on its business. That cash reserve, as shown in the report, amounted to $26,500 in cash, $22,000 in liberty bonds, treasury notes and war savings stamps. These government securities were purchased, according to the testimony (which is undisputed), through a sense of patriotic duty, and were not considered by the appellant as in the nature of investments. Being quickly convertible into cash, they were taken to be cash, and under the circumstances attending their purchase and the situation of the country at that time, we must agree that, to all intents and purposes, the appellant had in cash about $48,000. This the state insurance department says is too great an amount, but contents itself merely with that statement and proffers no suggestion of what would have been the proper amount. It may be that, in the light of experience gleaned from a longer business lifetime, $50,000, as a matter of fact, was not necessary. But "hindsight" is not the criterion by which this is to be determined.

The respondent further argues that, even if $50,000 was a proper amount to save in the reserve, with the cash on hand and the premiums in the course of collection, the amount represented by the government securities was an asset available for investment. This argument overlooks the fact that the premiums in the course of collection are not necessarily cash, although they may be collected within the course of ninety days. It must be presumed that the appellant will continue to do business in at least the same rate at which it was doing it at the time the premiums were put upon its

books; and, if that is true, there will continue to be premiums in the course of collection, and hence there will be increasing liabilities upon policies and the continued cost of operation, etc. The premiums in the course of collection, therefore, do not become the equivalent of cash.

So the question finally resolves itself into whether the $50,000 was a proper amount. As a matter of fact, the appellant was fortunate in not being compelled to use that amount in the payment of losses. But where men of honesty and business experience, such as were the members of the managing board of the appellant, determine that a certain amount must be held in reserve to meet the contingencies of a highly uncertain and (in this case) untried business, the exercise of that judgment, when so made, should not be disturbed unless the amount reserved is so great that there can be no question that it is excessive. Praise, rather than penalty, should be accorded to those who are conservatively managing the affairs of others.

The judgment of the lower court is reversed, and judgment entered in the amount prayed for.

MAIN, C. J., PARKER, HOLCOMB, and TOLMAN, JJ., concur.