FRANCES C. LENOW *et al.* *v.* E. A. ARRINGTON *et al.*

(*Jackson.*     April Term, 1902.)

1. **SALE OF PROPERTY.** **Of persons under disability in chancery court.**

   Jurisdiction and power is conferred upon the chancery court by statute to make sales of the property of persons under disability where it is clearly to the interest of such parties, or necessary for their support, education, and maintenance.

   The statute added nothing to the jurisdiction of the court which it possessed and exercised prior thereto, which jurisdiction extended to all cases where it was to the interest of parties under disability that such sales should be made, and to the ratification of such sales already made, when the facts warranted such sales. (*Post, pp.* 727-730.)

   Cases cited and approved: Thompson v. Mebane, 4 Heis., 370, 377; Hobbs v. Harlan, 10 Lea, 268; Talbot v. Provine, 7 Bax., 509, 510; Cicalla v. Miller, 105 Tenn., 262; Taylor v. Keeton, 10 Hum., 539; Williams v. Williams, 3 Bax., 59; Brown's Case. 8 Hum., 207; Gray v. Bernard, 3 Bax., 63; Ridley v. Halliday, 106 Tenn., 607, 613; Vacarro v. Cicalla, 89 Tenn., 74.

   Code cited and construed: Secs. 5072-5089 (S.); secs. 4054-4071 (M. & V.); secs. 3323-3340 (T. & S. and 1858).

2. **SAME.** **Same. Where will does not expressly prohibit sale.**

   Where testator devises the net proceeds of the annual rents and profits of land to his wife and children for life, with direction that the land be kept together during the life of his wife, and it is manifestly the purpose of the testator that the income of the property should be received by the life tenants for their support, a sale thereof is not expressly prohibited in the sense of the statute which provides that "in no case shall property

Lenow v. Arrington.

be sold if it be claimed under a will which expressly directs otherwise;" for by its terms this statute applies only when such sale is expressly prohibited by the will. (*Post, pp.* 724, 728-729, 732-733.)

Cases cited, distinguished and approved: Porter v. Porter, 1 Bax., 303; Hurt v. Long, 90 Tenn., 460.

Code cited and construed: Sec. 5089 (S.); sec. 4071 (M. & V.); sec. 3340 (T. & S. and 1858).

3. **SAME.** Same. Same. Direction for division of land devised is not a prohibition of sale.

Where the testator directs that his real estate shall be divided but does not direct in express terms that no sale shall be made, a sale thereof is not expressly prohibited in the sense of the statute forbidding a sale where the will expressly directs otherwise. (*Post, pp.* 733-734.)

Cases cited and approved: Hawkins v. England, 3 Head, 652; Gavin v. Curtin (Ill.), 49 N. E., 523, 40 L. R. A., 779.

Code cited and construed: Sec. 5089 (S.); sec. 4071 (M. & V.); sec. 3340 (T. & S. and 1858).

4. **SAME.** Same. Where income is not sufficient for life beneficiaries, when.

Where a will directed the income of the estate paid to the testator's children and widow during life, and it evidenced a manifest purpose and intent on the part of the testator to provide an income for his wife and children sufficient for their support and maintenance, and it appears while debts for money borrowed to rebuild burned and condemned houses might be paid from the income, yet not enough would be left for the suitable maintenance of such beneficiaries, a decree ordering a sale of land to pay the debts is proper under the statute authorizing the sale of property of persons under disability. (*Post, pp.* 735-736.)

Code cited and construed: Secs. 5072-5089 (S.); secs. 4054-4071 (M. & V.); secs. 3323-3340 (T. & S. and 1858).

111 Tenn—46

Lenow v. Arrington.

5. **TRUST AND TRUSTEES.** Sale of property decreed to pay expenditures for improvement.

Where a trustee failed to make application in the first instance, but subsequently comes into a court of chancery and asks an approval of his acts, and a sale of property to pay for expenditures, it will grant the relief sought, where it would have done so in the first instance, if he gives good reasons for not making the application before the expenditures were made. (*Post, pp.* 730-731.)

Cases cited and approved: Roseborough v. Roseborough, 3 Bax., 314; Hobbs v. Harlan, 10 Lea, 268, 275; Cohen v. Shyer, 1 Tenn. Chy., 194.

6. **SAME.** Same. Sufficient reason for failure to apply to court before improvements made.

A sufficient reason is shown for not seeking the aid of the chancery court before making the expenditures, where a testamentary trustee, required to keep property together and distribute the income, shows that when the contracts for improvements were made the income was such as would have paid off the indebtedness prior to the filing of the bill, but on account of the condemnation of other property, increased taxation, and gradual decrease of the income occurring subsequent to the improvements and prior to the filing of the bill for leave to sell property to pay for the expenditures in erecting new buildings in the place of those destroyed and condemned, the income had become insufficient for such purpose. (*Post, pp.* 731-732.)

7. **GUARDIAN AND WARD.** Restriction on guardians does not limit jurisdiction of chancery court.

The statute forbidding guardians to make contracts for improvements on real estate binding on the estate of their wards beyond their minority was not intended to limit or control the jurisdiction of the chancery court, but was designed to limit the powers of guardians. (*Post, pp.* 734-735.)

Code cited and construed: Sec. 4283 (S.); sec. 3387 (M. & V.); sec. 2515 (T. & S. and 1858).

Lenow v. Arrington.

8. **SAME. Same. Lease and other improvements by guardian approved.**

Notwithstánding the statute restricting the power of guardians to make improvements, the chancery court has jurisdiction during the minority of infants to confirm lease improvement contracts, and other contracts for the protection and preservation of their real estate, when it is made manifestly to appear that it is to their interest to do so. (*Post, pp.* 734-735.)

Case cited and approved: Talbot v. Provine, 7 Bax., 510.

FROM SHELBY.

Appeal from Chancery Court of Shelby County.—F. H. HEISKELL, Chancellor.

W. W. McDOWELL, for Lenow.

A. H. MURRAY and F. T. EDMONDSON, for Arrington.

MR. JUSTICE WILKES delivered the opinion of the Court.

This suit involves the construction of the will of Jos. Lenow, and the question of the power of the chancery court to sell lands belonging to the estate, as affected by the statute (Shannon's Code, section 5089).

The will, so far as is necessary to be set out, is as follows:

"(3) I direct that my real estate I may own at my death shall be kept together during the life of my wife, and that until her death one-third of the net proceeds of the annual rents and profits of said real estate be received and enjoyed by her for her sole and separate use," etc.

"(4) I direct that until my wife's death the remaining two-thirds of the net proceeds of the annual rents and profits of my real estate shall be divided equally amongst my then children, or their issue, *per stirpes*.

"(5) After the death of my wife I direct that all my real estate shall be divided into as many parts as I may have children, or their issue, *per stirpes*. To my son Henry J. Lenow, if then living, I give and devise one of said equal parts absolutely and in fee simple; and to each of my daughters so living I lend one of said equal parts during her natural life, to her sole and separate use and behoof, to the entire exclusion of her husband, present or future, both during and after her coverture. In the foregoing the living issue of any deceased child of mine who may have died previous to the death of my wife shall represent *per stirpes*, such deceased parent, and take such parent's equal share absolutely and in fee simple.

"(6) At the death of either one of said daughters I give and devise her share of my estate to such child or children, or the issue of such, as she may leave or have at the time of her death, to them and their assigns in fee simple. But if either one of my daughters should

die without leaving a child or children, or the issue of such, as above provided, then and in that event I lend the share of such daughter so dying as aforesaid to the remaining brother or sister during her life, in equal parts, if more than one, and to the survivor if but one, with power, however, in my son Henry to dispose of any portion of my estate which he may acquire under the items of my will in any manner he may desire.

"(9)  Having the utmost confidence in my beloved wife, Frances C. Lenow, I appoint her my executrix and trustee under this, my last will and testament, and waive the giving of a bond by her, either as executrix or as trustee, or filing any inventory."

The will was executed in 1885, and Jos. Lenow died in September, 1889. It was duly probated. The executrix qualified, and wound up her duties as such in 1891. She then qualified as trustee under the will, and entered upon the discharge of her trust, and has continued to execute the same to the present.

The testator left a large amount of valuable real estate, part situated in the heart of Memphis, and part in the suburbs. Certain lots on Walker and College avenues bring in but little more income than is necessary to pay taxes, insurance, and repairs upon the houses situate thereon. Houses upon two lots on Main and Union streets burned down in 1892. This property belonged one-half to Frances C. Lenow in her own right for life, while the rear half, with a front on Union street, belonged to the trust estate. It became necessary

to rebuild on said property, and during the removal of said walls and rubbish, which was the result of the fire, one person was killed, and two injured, which resulted in a liability upon the estate of $750, which was paid by the trustee.

There was insurance on the property of $4,531.38, but all except $1,900 was consumed in removal of the rubbish, tearing down the walls, and discharging the liability before referred to, leaving only about $1,900 to be used in rebuilding. The cost of the new building, which was a four-story brick business house, was $34,000; and, in order to pay for the same, the trustee borrowed $30,000. The gross income at the time it was rebuilt amounted to $8,000 per annum, of which $3,000 was paid on behalf of the share and interest of the estate in the property.

Another house belonging to the estate, located on the west side of Main street, was condemned by the city authorities as dangerous, and was removed; and the complainant, as trustee, erected in its stead a four-story building at a cost of about $15,000, about $10,000 of which is still unpaid. This property brings a rental of $3,000 per annum. It appears from the record that the entire rent from the property in the hands of the trustee is not sufficient to pay the taxes, insurance, repairs, and other necessary expenses on the same, and at the same time leave a sufficient and comfortable support for the children of the testator and their family, as contemplated in his will. It also appears that the complain-

ant Frances C. Lenow has paid her one-half of the money borrowed to improve the joint property, and has paid, also, out of her individual funds, several thousand dollars on the expenses of the family, and the debts and expenses of the trust estate; and she expresses a willingness that her part of the trust property shall continue to be applied to the execution of the trust. She has not received for her own use any part of the rental of the trust estate, or its income, but has used it all in the execution of the trust and support of the family.

The proof shows that it would be to the interest of the estate to sell certain unimproved and partly improved real estate described in the record, for the purpose of retiring the indebtedness of the estate, and making the balance of the estate more productive; and this is the primary object of the bill. A portion of the defendants are adults, and answer, admitting the allegations of the bill, and the propriety and necessity of the relief prayed. The minors answer by guardian *ad litem,* and submit their interests to the custody of the court. Henry J. Lenow is a party complainant with the trustee, and joins in the prayer of the bill. He also deposes and shows the necessity of the relief prayed. Other adults interested also join in the bill as complainants.

It clearly appears from the pleadings and proof that the relief prayed for should be granted, if it can be done under the terms of the will and the provisions of the statute (Shannon's Code, section 5089) relating to the sale of property of persons under disability. The chan-

cellor construed the will, and was of the opinion he had the power to grant the relief and make the sale as prayed, and that it should be done; and he thereupon ordered a sale of certain parts of the real estate as prayed for,—the sale to be by the trustee, subject to the approval of the court. The guardian *ad litem* appealed, and has assigned errors, which present the question whether the chancery court had jurisdiction to decree a sale under the terms of the will and provisions of the statute, and whether the debts contracted by the trustee were such debts as were necessary in the proper execution of the trust, and such as the trustee had the power and authority to make, and generally the right and power of the court, under the facts in the record and the law applicable, to grant the relief and make the sale.

Article 7, chap. 3, of Shannon's Compilation, treats of the sale of property of persons under disability, and gives the court of chancery full power to make such sale under the provisions of the chapter, and the mode of proceeding is pointed out in detail. In general terms it may be stated that such sale is authorized in cases where it is clearly to the interest of the parties under disability that it should be made, or necessary for the support, education, and maintenance of such persons.

Section 5089 provides, "In no case shall property be sold if it be claimed under a will which directs otherwise." In the case of *Porter* v. *Porter,* 1 Baxt., 303, the case was reserved whether the court could order a sale, notwithstanding the provisions of this section, in a case

where the proof showed clearly the necessity and propriety of such sale; but in that case the proof did not make out such case of propriety and necessity. In the case of *Hurt* v. *Long,* 90 Tenn., 460, 16 S. W., 968, it was said, referring to the case of *Porter* v. *Porter,* that it was intimated in the case, and was doubtless true, that the chancery court might, in a proper case, by virtue of its inherent power and jurisdiction, decree a sale contrary to the provisions of the statute referred to. But the statute does not appear to have been involved in that case, and the question actually passed upon was the inherent power and jurisdiction of the court to sell lands of persons under disability independent of any of the statutes conferring such jurisdiction. It was held that the statute added nothing to the jurisdiction of the court which it possessed and exercised prior to the statute, and that jurisdiction extended to all cases where it was to the interest of the minors that such sales should be made, and to the ratification of such sales already made, when the facts warranted such sales; and this is the general rule, as held by this court. *Thompson* v. *Mebane,* 4 Heisk., 370, 377; *Hobbs* v. *Harlan,* 10 Lea, 268, 43 Am. Rep., 309; *Talbot* v. *Provine,* 7 Baxt., 509, 510; *Cicalla* v. *Miller,* 105 Tenn., 262, 58 S. W., 210; *Taylor* v. *Keeton,* 10 Humph., 539; *Williams* v. *Williams,* 3 Baxt., 59; *Brown's Case,* 8 Humph., 207; *Gray* v. *Bernard,* 3 Baxt., 63; *Ridley* v. *Halliday,* 106 Tenn., 607, 613, 61 S. W., 1025; *Vacarro* v. *Cicalla,* 89 Tenn., 74, 14 S. W., 43.

In the case of *Williams* v. *Williams,* supra, a sale was made for reinvestment, upon application of the life tenant, on the ground that the life tenant and minors had no funds, and were unable to repair or improve the lands sought to be sold, and not sufficient means to support and educate the minors. In the case of *Gray* v. *Bernard,* supra, the bill was filed by the husband of the life tenant against the trustee and remaindermen for the sale of trust property on the ground that it was necessary to save something for the remaindermen; the life tenant having refused to pay the taxes, as he was unable to improve the property, but was willing to a sale.

In the case of *Hobbs* v. *Harlan,* 10 Lea, 268, 43 Am. Rep., 309, the guardian made improvements, where houses had burned down, which increased the rental value of the farm, and made repairs, which improvements, however, did not add to the permanent value of the farm; yet, without any approval or ratification of the guardian's act, the court, in a suit by his ward for a settlement, allowed the guardian credit for his repairs, and permitted him to reimburse himself out of the increased income to the extent that he had collected it. And it is now also settled in Tennessee that where a trustee failed to make application in the first instance, but subsequently comes into a court of chancery and asks an approval of his acts, and a sale of property to pay for such expenditures, it will grant the relief sought, where it would have done so in the first instance if he

Lenow v. Arrington.

gives good reasons for not making the application before the expenditures were made. *Roseborough* v. *Roseborough,* 3 Baxt., 314; *Hobbs* v. *Harlan,* 10 Lea, 268, 275, 43 Am. Rep., 309; *Cohen* v. *Shyer,* 1 Coop. Ch., 194.

In the case at bar the trustee gives as a reason why she delayed to ask the aid of the court earlier that when she made the contract for the erection of the new building on Union street in 1892 she had leased it at a rental which added to the rents of the other trust property, would have paid the current taxes and other burdens thereon, and also have paid off the debt contracted for the erection of said building prior to the filing of the bill in this cause, and the estate would have had a permanent, valuable building, free from debt. But soon thereafter three of the houses on the trust property were accidentally burned. Later the store on Union street, which in 1892 produced a good income, was condemned by the city of Memphis, and ordered to be torn down. The rents on the other buildings decreased about 40 per cent. from various causes. The tax rate on all the trust property was increased in a very marked degree. The valuations were also raised in assessing the property. One-fourth of the trust property, in value, was outside the city in 1892, but was brought into it about four years ago, which, by the imposition of the city taxes thereon, increased its tax burdens more than 200 per cent. This bringing of the property into the city made it compulsory upon the trustee to expend large sums of money for water-closets and plumbing, in making sewer

connections, and required annual expenditures to keep them in repair. And while the rents on the said new building have been more than the cost thereof and interest thereon, a large net income has been, from the above causes, changed into a deficit. These changed conditions as to reduced rents and increased burdens on the property were not such as could be reasonably anticipated. Under the conditions existing in 1892, she would not have been justifiable in asking relief at the hands of the court, nor would she have been able to show such a state of facts as would call for the exercise of the power of the court. And the necessity for such relief has developed gradually since that date, until it had, when the bill was filed, become necessary, if not imperative.

Such being the law in regard to sales of real estate when necessary for the support, maintenance, and education, and when to the manifest advantage and interest, of the party under disability, who proceed to consider whether the statute referred to (section 5089) inhibits the sale in this case. This statute, by its terms, applies only when such sale is expressly prohibited by the will under which the property is held. In the will now under consideration a sale of the property is not expressly prohibited. It was evidently the purpose of the testator to provide an income for the maintenance and support of his family; embracing in that term the beneficiaries under his will, whether living together or not. This was his primary object, purpose, and intent.

In order to accomplish this, and as a means to secure it, he provided that his real estate should be kept together, and managed by his wife, as trustee, so as to secure the income therefrom, to be applied to the benefit of herself and other beneficiaries under the will.

At most, there can only be said to be an implied intent that his property should be kept together and not sold, but this cannot be allowed to defeat the primary object and intent of the testator,—to provide an income for the beneficiaries under the will. It is also true that the testator expected, and so directed, that his real estate should be divided, and this impliedly negatives the idea of a sale; but he did not provide that no sale should be had, in express terms, if such sale became necessary or advisable. Upon this feature of the case, *Hawkins* v. *England,* 3 Head, 652, is in point. There a petition was filed to sell land for partition, claimed under a will providing that it should be equally divided among the testator's children, one of whom resisted the sale on the ground that the will expressly provided otherwise. But the court said "it did not expressly provide otherwise;" that "it directs that an equal division shall be made between his children. But he does not expressly, nor impliedly, we think, forbid that this may be done, if the interest of the devisees would be best promoted by such course." This ruling is directly in point.

In the case of *Gavin* v. *Curtin* (Ill.), 49 N. E., 523, 40 L. R. A., 779, where the will is similar to the will here, the widow filed a bill to sell part of the real estate to

save the balance from loss through the inability of the tenants to pay taxes. There is a statute in the State of Illinois similar to said section 5089, which was set up as a defense to the relief sought, and it was insisted that the property must be kept intact. The court, in passing upon this issue, said: "There is no express denial of the right of alienation by the will, but it is manifest it was the expectation of the testator that the property should be kept together. But we think it well settled that a court of equity, if it have jurisdiction in a given case, cannot be lacking in power to order a sale of real estate which is a subject of trust on the ground alone that the limitation of the instrument creating the trust expressly denies the power of alienation."

It is true that section 4283, Shannon's Code, forbids guardians to make contracts for improvements on real estate binding on the estate of their wards beyond their minority. But this act was not intended to limit or control the jurisdiction of the court, but was designed to operate alone upon and limit the powers of guardians; and, notwithstanding this statute, such courts have jurisdiction during the minority of infants to confirm lease improvement contracts, and other contracts for the protection and preservation of their real estate, when it is made manifestly to appear that it is to their interest to do so, as has been held in *Talbot* v. *Provine,* 7 Baxt., 510. And the authorities cited above, touching the inherent jurisdiction of chancery court, show that it is the common practice of that court to ratify and confirm such

contracts both before the expenditures are made, and also afterwards, when good reasons are shown for not making application before the expenditures are made. Much more liberally will this rule be applied in case of testamentary trustees.

The court below properly found from the facts in the record that a sale of the real estate as ordered was to the best interest of all parties interested, and especially of the minors, and that it was necessary to their support, maintenance, and education, as they had no other means, and properly ordered the sale of such of the property as was least productive and most burdensome to keep, and that the debts were properly incurred in the good-faith execution of the trust, and were necessary to preserve the property and render it productive, and were incurred by the consent and advice of the adult beneficiaries, a part of whom had no funds or estate to support themselves and their children, and to support the latter. It was manifestly the purpose of the testator that his children should receive from the income of the property a support for themselves and their families, and by the course pursued by the trustee, and the sale now decreed to be made, the property is made productive for that purpose.

It appears that $14,000 of the debt decreed to be paid is the balance on the $17,000 borrowed for the estate to make the improvements on behalf of the trust estate; that, since the improvements were made, $22,243 has been received as rental for this property, while the in-

terest on the money borrowed to pay for the same is only $5,200. While the debts might thus be paid out of the income, it would leave nothing for the support and maintenance of the family, as the remainder of the property is not so productive. The improvements are shown to be substantial and permanent,—worth more than they cost; and the conversion of this property to be sold and then reinvested is to the interest of all parties, and necessary to preservation of the property and to obtaining the rents therefrom. The present attempt is not to sell the property for the purpose and with the intent to consume the proceeds, but, rather, to reinvest them in improving other property, making it more desirable, and yielding more income in accordance with the primary purpose of the trustee.

We are entirely satisfied that the court below not only had the jurisdiction and power to grant the relief it did, but that it was properly and judiciously done; and the decree of the court below is affirmed, and the cause remanded for further proceedings. The costs of appeal will be paid by the complainant, as trustee, as she will have credit for the same in her accounts as trustee. The costs of the court below, as well as the fee of the guardian *ad litem,* will be fixed and provided for by the court below.