## HOSMER J. BARRETT v. DOVER J. BARRETT, et al.

Western Section. May 10, 1926.

No petition for Certiorari was filed.

1. **Courts.** Chancery court has jurisdiction to ratify a lease made by life tenant.

In an action brought in a chancery court to ratify a lease where the property had been left to certain parties for life, and the remainder over to their children or their descendants and if none, then to a church, and where the life tenant desired to make a lease for a long term of years, held that the chancery court had jurisdiction of the matter and upon the showing that the lease was beneficial to the owner of the fee that it could ratify the lease.

2. **Courts, jurisdiction.** A class is bound if any member is represented in the suit.

In an action to ratify a lease held that if any member of the classes who might later receive the fee were in court that the class as a whole was bound and no later member of the class could avoid the judgment.

3. Landlord and tenant. Lease made by life tenant for a long term of years and approved by chancery court binds remaindermen after death of life tenant.

In an action to ratify a lease made by a life tenant, held that if any member of the class of remaindermen joined in the suit and the court finding that the lease was for the benefit of the ramaindermen ratified the same, the remaindermen would be bound by the lease after the death of the life tenant.

Appeal from Chancery Court of Shelby County; Hon. Whiteman Hughes, Chancellor.

Affirmed.

Holmes & Canale, and Jno. W. Loch, of Memphis, for appellant; Isaac Silver & Bros. Co., Inc.

Samuel O. Bates, of Memphis, for Catholic University of America.

Silvey, Evans & McCadden, of Memphis, for complainant.

J. P. Hamner, for other defendants.

OWEN, J. The defendant, Isaac Silver & Bros. Co., Inc., with its principal office in New York City, has appealed from a decree rendered in the chancery court of Shelby county sustaining complainant's bill. The bill was filed for the purpose of obtaining the ratifiication, confirmation and approval by the chancery court of a lease to certain storehouses located on the west side of Main street in Memphis, Tennessee. Said storehouses are known as numbers 47 and 49 South Main street, and consist of a four story brick building, which building has been erected for 50 or more years. It appears that nos. 47 and 49 S. Main street each has a frontage on said street of 24-3/4 feet and a depth of 148-1/2 feet to a public alley. Both of these pieces of property were owned by one John T. Frost, an uncle of the complainant Hosmer J. Barrett, and of the defendant, Dover J. Barrett.

It appears that John T. Frost died on the 23d day of April, 1918, testate, and by Item Three of his last will and testament he devised to his nephews, the said Hosmer J. Barrett and said Dover J. Barrett, lot No. 47 S. Main street, in the city of Memphis, for and during the joint lives of said two nephews, with the remainder to the survival of them for life, with the remainder in fee per capita to any living child of them, or either of them, and to any descendant or descendants, of any child, or children, as may have predeceased said survivor, such descendants to take per stirpes; or in the event there is no child or descendant of the said Hosmer J. Barrett and Dover J. Barrett, or either of them, living at the date of the death of the survivor of them, then with remainder in fee to the Catholic University of America, at Washington, D. C. Said testator also devised to his said nephews Hosmer J. Barrett and Dover J. Barrett a lot of ground immediately south of and adjoining the above-described lot and of the same dimensions, having thereon a building known as No. 49 South Main street.

No 49 South Main street was devised to Hosmer J. Barrett and Dover J. Barrett as Trustees with directions to rent the property and the net income therefrom, after payment of taxes, costs, repairs, etc. in their discretion to pay to Rose Chevalier Barrett, wife of T. Frost Barrett, a nephew of the testator, during her life, but without any obligation on the part of the Trustees to do so, with remainder to the said Hosmer J. Barrett and Dover J. Barrett in fee. Hosmer J. Barrett conveyed his title in said No. 49 South Main street to his brother, Dover J. Barrett, who now owns the same subject to whatever rights the wife of T. Frost Barrett may have to any rents from the property.

Complainant below then avers that he and his brother Dover had received from Isaac Silver & Brothers Company, Inc., the appellant here and one of the defendants below, and who will for brevity hereinafter be referred to as Silver, a proposition or offer to lease both parcels of land hereinabove referred to for a term of twenty-five years, upon the terms of an annual gross rental for the first thirteen years of thirty-four thousand ($34,000) dollars per annum and an annual gross rental for the last twelve years of the lease of thirty-five thousand dollars per annum, the rents to be paid monthly; and in addition to the aforesaid rental the tenant is to spend at least thirty thousand ($30,000) dollars in remodeling said buildings, and putting them in a proper state of repair, and so to remodel them that said buildings may be used by the tenant as a whole and as one storehouse. The lease further provides that the tenant shall keep the premises, at its own expense, in good repair during the lease term, and hold the owners harmless against any loss or damages for personal injuries or other damages, during the lease term, in and about the premises. The lease further provides for the payment by the owners of the usual and customary real estate commission to the realtors who negotiated this lease. It is further provided that the building shall be kept insured by the lessors against fire or other casualty, and for the restoration of the buildings in the event of their destruction.

The lease executed by the Barretts and Silver is made an exhibit to the bill, and it was agreed that Silver would not have to accept the lease unless it was approved by the chancery court of Shelby county and Court of Appeals.

It is shown that the lot No. 47 has been vacant for a number of months and the Barretts are not financially able to make the necessary improvements to secure a suitable tenant. It is further shown that it is to the advantage, both to the owners and to the lessee, to have both lots, Nos. 47 and 49, occupied by the same tenant. All the defendants to the bill filed answers and all insisted except Silver that is to the advantage of all parties to this litigation to have

said lease ratified and approved. A number of depositions were taken by complainant, which established the fact that the lease is a very advantageous one and for the manifest interest of all persons who have, or may have in the future, any interest in this property. It is shown that a building of about the same size as the one owned by the Barrett's and on the same street, and near the Barrett or Frost buildings, had been rented by the Bank of Commerce to the Piggly-Wiggly Corporation for a period of twenty years at a rental of $32,000 per year.

The complainant is 44 years of age and has never been married. The defendant, Dover J. Barrett, is 41 years of age and has been married about 12 years. No children have been born to either Hosmer J. or Dover J. Barrett. Both of the Barretts are in a good state of health and each has a life expectancy of more than twenty-five years.

The Chancellor filed a written finding of facts, which is found in the transcript sustaining the complainant's bill,. and holding that it was for the manifest interest of all parties in esse or in posse to have this lease ratified and approved. The defendant Silver excepted, prayed and was granted an appeal to this court, and has assigned two errors.

The first error raises the question of the jurisdiction of the chancery court to approve this lease. This question of jurisdiction was raised by Silver's answer.

By the second assignment of error it is insisted that the proof is insufficient to sustain the finding of the Chancellor.

We are of the opinion that the chancery court had jurisdiction to ratify this lease. In the case of Ridley v. Halliday, 106 Tenn., 607, the Supreme Court of Tennessee, speaking through Justice Beard, held that "a chancery court has inherently, without the aid, and in the absence of any inhibition, of statute, jurisdiction and power to bind and conclude, by its decree converting realty into personalty, the rights and interests, whether legal or equitable, vested or contingent, present or future, of all persons, whether in esse or in posse, and whether sui juris, or under disability, who are before the court either by service of process or by 'virtual representation,' but it must satisfactorily appear that such conversion is for the best interest of all the parties, and the decree must award the several parties the same interests in its proceeds which they enjoined in the realty, and provide for protection of same." ·

"Where lands have been deeded to or in trust for A for life, remainder to his widow and children, and descendants of the later, and, in default of such, to the children of the grantee and their descendants, a Court of Equity may, upon a bill filed by A and his trustee, representing the life estate, before the birth of any person

of the first class of remaindermen, viz: children of A, against the living children and grandchildren of the grantee, some of whom are infants, pronounce decree declaring that the conversion of such realty into personalty will be for the best interest of all parties —those in posse as well as those in essee—and converting same accordingly, and awarding and protecting the rights of the parties in the proceeds of the lands, and such decree will be binding upon the unborn children of A, on the theory that they are represented in the litigation by the life tenant.''

"In the section referred to, Judge Story says: 'Doubts were formerly entertained whether in suit in equity for a partition, brought only by or against a tenant for life of the estate, where the remainder is to persons not in 'esse, a decree could be made which would be binding upon the persons in remainder. That doubt, however, is now removed, and the decree is held binding upon them upon the ground of a virtual representation of them by the tenant for life in such cases.'

"It is true that this statement of the rule by the author is by its terms limited to cases in partition, but as we have already seen it was applied in Leonard v. Lord Saxon, supra, in the matter of account, and to the enforcement of a trust in favor of creditors by a decree for the sale of lands. Finch v. Finch, supra. No sound reason has been, and so far as we can discover, can be suggested why it should not apply in any other proceeding where a Court of Equity is exercising its jurisdictional power in disposing of real estate, the title to which is embarrassed by contingent remainders awaiting unborn remaindermen. If in the one class of cases necessity requires an application of the doctrine of virtual representation, why should it not be as operative in the later? We have held that without the aid of the statute already referred to, a Court of Equity, in proper cases, has the inherent power to convert, for the benefit of minors, realty into personalty. Hurt v. Long, 90 Tenn., 445; Thompson v. Melbane, 4 Heisk., 370. In such a case could there be found any solid ground for distinguishing it, so far as this matter of representation is concerned, from a case of mere partition? We think not. If in the case of partition and of the conversion of the property of infants, falling within the inherent jurisdiction of Courts of Equity, then why not in every case, where the nature of the trusts and the situation of the property make it eminently judicious, if not absolutely essential, in the interest of all persons in esse as well as in posse, that a conversion should take place?''

Counsel for appellant insists that the case of Ridley v. Halliday, involved a bill for the sale of real estate and not a lease. However,

our Supreme Court, again speaking through Chief Justice Beard, in Ricardi v. Gaboury, 115 Tenn., 484, held that the chancery court has jurisdiction conferred by statute, and the chancery court has inherent jurisdiction, independent of the statute, to sell the real estate when it is manifestly for its interest that a sale be made, citing Ridley v. Halliday, supra, and Lenow v. Arrington, 111 Tenn., 720; and it was further held in the Ricardi case that the chancery court also has inherent jurisdiction to decree the execution of a lease of the real estate of infants for a term extending beyond their minority, where such lease is manifestly for their interest. In the Ricardi case the life tenant sought to have a lease approved, leasing certain property on Gay street in Knoxville, Tennessee, for a period of 99 years. It appeared that such a lease was to the manifest interest of the life tenant and the remaindermen. The court in pronouncing its approval among other things said:

"The theory upon which the court exercises its jurisdiction in all such cases is that the infant's real estate shall be so controlled by its decrees as to secure his best interest. In Lenow v. Arrington, supra, this court affirmed a decree of the chancellor authorizing a sale of unimproved property in which minors had an interest, and at the same time approved the acts of a testamentary trustee, who, without express authority given in the will, had made mortgages upon real estate in which these minors were interested, the proceeds of which were used in its improvement with the view of enlarging the rental income. We think it equally within the power of the chancery court to authorize the making of a lease of the property of a minor as will be most beneficial to him. In Talbot v. Provine, 7 Baxt., 502, the court said:

"'We are of opinion that, during the minority of infants, the chancery court has jurisdiction to authorize or confirm leasehold contracts for the protection and preservation and for the enhancement of the real estate of such infants, when it is made manifestly to appear that contracts for either of these purposes is for the interest of the minors. Whether such contracts could be authorized or confirmed producing incumbrances on the estate of minors after their majority we are not now called upon to decide.'

"The question thus reserved, because not necessary for determination in that case, has been answered by other courts of very high authority. In Hedges v. Riker, 5 Johns. Ch., 163, there was a devise to executors, in trust for C. for life, and, if she died without issue, then in remainder over, with power to the executors to "sell and dispose of so much of the real estate as should be necessary to fulfill the will," and it was held by Chancellor Kent that this power was sufficient (the persons in remainder being infants) to authorize the executors to execute leases for years of the real

estate for such terms and upon such conditions as were reasonable and necessary to carry into effect the intention of the testator expressed in the will. Not content, however, to rest the case alone upon an implication from the power given in the will, it was held that the court, having jurisdiction over the property of infants, could authorize the executors to make such leases, with consent of the tenant for life, for the term of twenty-one years, or building leases, as they should deem most beneficial to the interest of the tenant for life and those entitled to the reversion or remainder in fee. In the course of the chancellor's opinion it is said: 'A lease for years is still a disposition of the estate within the terms of the power, and without resorting to this power, the general jurisdiction of the court over the property of infants is adequate to confer the authority. The court stands, as Lord Nottingham observed, in loco parentis, and it is understood to be clearly settled (Mills v. Dennis, 3 Johns. Ch., 370) that the court may change the estate of infants from real into personal, and from personal into real, whenever it deems such a proceeding most beneficial to the infant. It was declared by the lords commissioners in Cecil v. Earl of Salisburg, 2 Vern., 224, that the court had often decreed building leases for sixty years of infant's estates, when for their benefit.' In Marsh v. Reed, 184 Ill., 263, 56 N. E., 306, it was held that a court of equity had jurisdiction of a bill to authorize a trustee under a will to execute a lease or real estate for a period of ninety-nine years, when it appeared that all the adult beneficiaries were desirour that the lease be made, and it was to the manifest interest of all parties, both adult and minors, that this be done, although the testator had by a clause in his will limited the power of the testamentary trustee in the making of the lease to a much shorter term.

"Without the support of authority, it would seem that, granting the jurisdiction of an equity court to dispose of fee in a minor's real estate when it clearly appeared this was manifestly in his interest, the disposition of a lesser estate upon the same ground might equally be sanctioned by the court. It is to be observed that the making of a lease such as the one desired by the complainants in this cause does not deprive the parties of any interest in the property to be leased. Its effect is simply to prevent the lessors from entering upon the property and taking actual possession thereof as long as the terms of the lease are observed by the lessee. The title to the property, and the right of alienation subject to the lease, remain as if no lease had been executed."

It results that we find that the chancery court had jurisdiction in the instant case and the first assignment of error is overruled.

As to the second assignment of error we approve and concur in the Chancellor's finding of facts as set forth in the transcript, and

we find the evidence sustains complainant's bill that it is to the manifest interest of all parties and especially the life tenants and the remaindermen to have this lease approved and confirmed. The second assignment of error is overruled.

The decree of the chancery court is affirmed. The cost of the lower court will be paid as decreed by the Chancellor. The cost of the appeal will be paid by the appellant. Execution will issue against the appellant and his surety on appeal bond for the cost of appeal.

Heiskell and Senter, JJ., concur.