ELLA B. SMITH v. JOHN FLEISCH, et al.

Western Section.    November 12, 1926.

Petition for Certiorari denied by Supreme Court, January 29, 1927.

1. **Injunction.** **The granting of an injunction lies within the sound discretion of the trial court.**
    The granting of an injunction lies in the sound discretion of the trial court and it is not subject to be appealed from or subject to be reviewed by an appellate court.

2. **Courts.** **Jurisdiction.** **Where an equity court once takes jurisdiction it retains the same for all purposes.**
    In an action to restrain a trustee under a will from selling real estate where the complainant had brought the trustee into court in her bill and the chancellor sustained the trustee's demurrer to the bill, but in his decree

ordered the trustee to sell the land only upon condition that the sale be approved by the court, held that the court properly had jurisdiction of the matter when a petition asking for the approval of sale was later filed by the trustee.

3. Partition. A sale of a large tract of land in one tract is not void where there is no equity of redemption.

Where land is sold in partition and there is no equity of redemption, it is not error for the land to be sold in one tract over the petition of one of the parties that it be sold in separate parcels.

4. Parties. Contingent remaindermen may be represented as a class by one party.

In an action to prevent the sale of real estate by trustee where it was insisted that all of the parties were not before the court held that since the complainant represented the contingent remaindermen as a class and had raised all issued that could be raised by other contingent remaindermen, it was not necessary for the trustee to give notice to all contingent remaindermen.

5. Trusts. Trustee must sell and manage property in strict accord with the conditions of the trust agreement.

A trustee must act in strict accord with the provisions and conditions of the instrument creating the trust and his management and disposition of the trust property must be regulated and controlled by the provisions.

6. Trusts. Where trustee is given the power to exercise his discretion court will not interfere with his bona fide acts.

It is now a well-settled principle that a trustee having the power to exercise discretion will not be interfered with by the court so long as he is acting bona fide. To do so would be to substitute the discretion of the court for that of the trustee.

7. Powers. An express power of sale may be given with a trust.

An express power of sale inserted in a deed or other instrument creating a trust is valid and a sale and conveyance thereunder is also valid without authorization by the court provided it is made under the circumstances and in the manner prescribed.

8. Trusts. Powers. Trustee given power to invest and reinvest impliedly has power of sale.

A power of sale will be implied from the power vested in a trustee to invest or re-invest or to change investments.

9. Trusts. Power of sale may be given by the court.

In cases where an express power of sale is not vested in the trustee it is within the authority of the court to direct the sale of trust property which in its present state is largely, if not wholly unproductive and is not yielding the income contemplated.

Appeal from Chancery Court, of Shelby County; Hon. D. W. De Haven, Chancellor.

Affirmed and Remanded.

Edgington & Edgington, of Memphis, for appellant.

Holmes & Canale and J. W. Loch, of Memphis, for appellee.

OWEN, J. Ella B. Smith has appealed from a decree of the chancery court denying her certain relief that she sought, and has assigned ten errors.

Ella B. Smith is a sister of George C. Bennett, deceased, and late a citizen of Shelby county, Tennessee. George C. Bennett died testate, leaving his property to his wife, Mary Bennett. Mary Bennett died in August, 1922, about two years after the death of her husband George C. Bennett. Mary Bennett also died testate. By her last will and testament she appointed the Union & Planters Bank & Trust Company, a corporation of Memphis, Tennessee, Trustee under her will and said Bank and Trust Company was appointed trustee for Gertrude Loving, the only daughter of George C. and Mary Bennett. It appears that between the time of the execution of Mary Bennett's will and her death, Gertrude Loving obtained a divorce from Elliott E. Loving and had her maiden name, Gertrude Bennett, restored to her. A few months after the death of her mother Gertrude Bennett married the defendant John Fleisch. The main question to be determined on this appeal is the right of the trustee to sell about eight hundred acres of land in Shelby county, some twelve or fourteen miles east of the city of Memphis. That portion of Mary Bennett's will appointing the defendant Bank as trustee is as follows:

"It is my desire that in event my said beloved husband, George C. Bennett, shall predecease me, as aforesaid, then my beloved daughter, Gertrude Loving, of Memphis, Tennessee, wife of Elliott E. Loving, shall be amply provided for under the terms of this will. I therefore direct that said Trustee hereinbefore named, or its successor in office, shall, in event my said beloved husband, George C. Bennett shall predecease me, as aforesaid, have complete and absolute control over my said estate herein bequeathed and devised, with full power of conversion and reconversion, and with further power in said Trustee, or its successor in trust, to sell, convey, lease, mortgage, or dispose of any and all of my said estate during the existence of said trust, where in its discretion it is necessary or convenient for the purpose of carrying into effect the terms and provisions of this trust, in which event the proceeds of such sale, mortgage or other conveyance, shall be reinvested in other property or securities, in the discretion of said Trustee, and such investment or reinvestment to be fixed and charged with the same trusts and uses as if originally bequeathed or devised herein.

"And to more effectually carry out the provisions of this trust, I hereby authorize and empower the said Trustee, or its successor in office, to execute and deliver any and all proper deeds and conveyances, or other instruments or writing, mortgaging, conveying, or transferring any or all my said estate, real, personal, or mixed, and to give unto the purchaser thereof an absolute title in fee simple, free and unincumbered from the provisions of this trust, or any lien whatsoever; and the purchaser at such sale shall not be required to

look to the application of the purchase money advanced for such property.

"All the aforesaid property set out in this the second item of my will, shall be under the exclusive dominion and control of the Trustee herein named, or its successor in office; said Trustee, or its successor, shall collect the rents from all the real estate embraced in this item of my will; shall pay all taxes, repairs, insurance, assessments, and other legal charges against the same, and shall likewise invest such cash as may be on hand at the time of my demise in good interest bearing securities, or other real estate, and shall collect the interest on such securities, and the rents from such real estate and shall further collect all the profits and dividends accruing from such securities, stocks or bonds, and after deducting all . . ."

It appears from the record that George C. Bennett and Mary Bennett both executed wills about the same time and a few months before the death of George C. Bennett, and both the testator and testatrix provided for the appointment of the Union & Planters Bank and Trust Company as Trustee and made the same provisions in case of survivorship as to the daughter Gertrude, etc. This trust was to last during the life of Gertrude Bennett and at her death all the property devised by Mary Bennett was to go to the issue of said Gertrude Bennett, but in case the said Gertrude Bennett should die without issue, then the property was to be divided between the heirs at law of George C. Bennett and the heirs at law of Mary Bennett, each branch of the respective families of heirs taking one-half of the property on hand at the death of Gertrude Bennett, provided she died without issue. It appears that both of these wills were written by Mr. Phil Canale, a prominent attorney of Memphis, and in each will it was provided that the said Phil Canale was to be the advisor and legal counsel for the Trustee, the Union Planters Bank & Trust Company.

A few weeks prior to the death of Mary Bennett, and after she was confined in the Gartley-Ramsey Hospital in Memphis, where she suffered for some ten or twelve weeks from an incurable disease, she had prepared two codicils to her will, the first codicil being prepared by J. E. Holmes, the partner of Mr. Phil Canale, and also a prominent member of the Memphis bar. By this codicil Gertrude Bennett was given the power to dispose of all the property of which she should take an interest under the will of Mary Bennett by last will and testament. About a week after this first codicil was prepared and executed by the said Mary Bennett, she had a second codicil prepared by Col. J. W. Canada, another prominent member of the Memphis bar. By this codicil she named Mr. Robert Scrivener as her executor and gave to Mr. Scrivener, who was a cousin of George Bennett, one hundred thousand dollars. On April 11, 1924, the com-

plainant filed her bill in the chancery court of Shelby county alleging that she was a contingent remainderman, being a sister of George C. Bennett, against the Union & Planter's Bank & Trust Company, Trustee, Gertrude Fleisch and her husband, John Fleisch, Robert S. Scrivener, Executor, and his surety on his executor's bond, and the other brothers, sisters and heirs of George C. Bennett and Mary Bennett. This bill made an attack upon the first codicil of Mrs. Mary Bennett's will. It also sought a discovery of the assets of the estate in the hands of the Trustee and in the hands of the executor, and sought an accounting from the executor. The bill further alleged that the Trustee was endeavoring to sell the farm at Ridgeway, which is the farm in controversy, and that if said sale was made a great wrong and fraud upon the rights of the remaindermen, of whom the complainant is one, would be had, and prayed for an injunction against the Trustee from selling said farm. A temporary injunction or restraining order was granted, restraining the Bank and Trust Company, defendant herein, as Trustee from exercising its power as Trustee under the terms of the will.

On October 27, 1924, upon motion to dissolve said injunction the following order was made by the Chancellor:

"This cause coming to be heard and being heard upon the —— day of October, 1924, upon motion of the defendants to dissolve the injunction herein, and it appearing to the court that the injunction in this cause should be dissolved:

"Now, therefore, upon motion of Holmes & Canale, attorneys for certain defendants,

"IT is ordered, adjudged and decreed that the injunction herein be and the same is hereby dissolved on the express condition however, that the real estate involved in this litigation shall not be sold without submitting the offer of purchase to the court and obtaining the approval of the court."

On the next day after this order modifying the injunction was had, the demurrers of the Union & Planters Bank & Trust Company, Trustee to complainant's original bill, and likewise the demurrers of Gertrude Fleisch and her husband John Fleisch were sustained and the bill dismissed as to said three defendants. Scrivener and his surety on the Executor's bond answered. Complainant appealed from the judgment sustaining the demurrers of the three named defendants, at the January Term, 1925, of the court of Civil Appeals, this appeal was dismissed on the ground that the appeal was premature; that the cause had not been finally determined in the lower court and the cause was remanded to the chancery court for further proceedings.

After the remand the Union & Planters Bank & Trust Company, Trustee, and hereinafter referred to as Trustee, filed a petition in

this cause, asking the court to approve the sale of the Ridgeway farm to one C. G. Smith; that it had an offer from said Smith, who was a reliable person, of the sum of $190,000 for said farm—$40,000 cash and the balance payable in installments extending for a period of five years, the deferred payments to bear six per cent interest payable semi-annually. It was insisted that this was a most advantageous sale. Said petition was filed the 31st day of March, 1926. This petition was answered by the complainant Ella B. Smith. She denied the Trustee's right to sell said tract of land and she insisted that the Trustee had no right to sell said tract in one lot; that it should be subdivided; that the Trustee was no longer a party to the suit; that the bill had been dismissed as to it; that the Trustee filed said petition without leave of the court; that the chancery court was without jurisdiction to act in the matter, and numerous other objections. The Chancellor ordered a reference to the Clerk & Master to take proof and report: (1) whether the Trustee was obtaining a full, fair and reasonable price for the property sold on the basis as set forth in the contract of sale and filed as an exhibit to the Trustee's petition; (2) could the acreage in question have been sold more advantageously by the Trustee by subdividing the same and selling in parcels, or was it more advantageous to sell said acreage as a whole.

The Clerk & Master on the order of reference took a number of depositions and reported that it was an advantageous sale, and it was to the best interest of all parties to sell the tract of land as one tract rather than to undertake to subdivide it. Complainant excepted to this report of the Clerk & Master, said exceptions were overruled and the report of the Clerk & Master was confirmed and the Trustee directed to execute a conveyance to the purchaser. The Clerk & Master reported that the proof shows that the net revenue from the 800 acres of land in controversy from October, 1922, which would be very shortly after the death of Mrs. Bennett, until March, 1926, was $578.94; that the property was in a bad state of repairs and that all the rents for those years between 1922 and 1926 had practically gone for taxes and improvements.

On the —— day of September, 1926, the complainant herein filed another original bill in the chancery court of Shelby county, praying for an injunction against the Trustee enjoining it from executing the deed to C. G. Smith, the purchaser of the eight hundred acres of land. The Chancellor refused to issue a temporary injunction in this second suit.

The appellant Ella B. Smith has raised the following propositions as errors in the decree of the Chancellor in ratifying the sale made by the Trustee to C. G. Smith for the eight hundred acres of land.

By its second and fourth assignments it is insisted that the chancery court was without jurisdiction to entertain this petition.

The second propostion is that the sale of the tract of land en masse or in solido is illegal and that the sale is an abuse of power conferred upon the Trustee by the will.

Third: That all the parties in interest were not before the court.

Fourth: The Chancellor erred in not granting complainant any relief on a new bill which was filed in September 1926.

Fifth: The Chancellor was in error in striking out certain allegations in the answer of Mrs. Smith to the petition to sell, as irrelevant and impertinent.

On the question of the Chancellor denying complainant any relief as to the bill filed in September, 1926, he simply refused to grant an injunction. This was in his sound discretion and is not subject to be appealed from or subject to be reviewed by an appellate court. We do not have to cite authorities in support of this statement of law. The bill filed in September, 1926, is not now before this court, except it is copied in the bill of exceptions to the record as made up from the pleadings and proof of the bill filed April 11, 1924.

On the question of jurisdiction, complainant had brought the Union & Planters Bank into court by her bill. While the Chancellor sustained the Trustee's demurrer, he also modified the injunction conditionally, the condition being that the Trustee would have to submit the offer of purchaser to the court and obtain the approval of the court before the farm could be sold. We find that the Trustee was simply obeying the orders of the chancery court when it filed the petition in the instant case asking that it be permitted to sell the farm to the proposed purchaser, C. G. Smith, and fully advise the court as to the terms of sale. The court thereupon properly ordered a reference. The Clerk & Master took proof and reported that it was to the advantage of all parties that the sale from the Trustee to C. G. Smith be confirmed. We have examined the record and find that there is material evidence, and in fact the great weight of the evidence sustains the Master's report.

Learned counsel for appellant cited numerous cases in support of their contention, that the sale was void because the farm was not subdivided and because it was sold as one tract. The proof shows that it was to the advantage of the owners to sell this farm as one tract; that it was eleven or twelve miles from the city of Memphis, and to subdivide the property into small tracts would be very expensive. The authorities cited by learned counsel for appellants in regard to sales of real estate apply to execution or judicial sales where the equity of redemption is not barred. The reason for this rule is that the owner whose land is sold by the sheriff might want to redeem one tract of land and not redeem another. Counsel rely

Vol. IV T. A.—10.

upon the case of Cook-Settle Company v. Walters, 2 Lea, 116, where is was held that if separate and distinct parcels of land are sold in gross under an execution, the sale is not only void at the election of the debtor, but it is also void as to judgment creditors. While the court held that to sell several distinct lots in gross under execution was not valid to divest the title to the debtor, our Supreme Court in the case of Cook-Settle Company v. Walters, supra, speaking through Mr. Justice McFARLAND, said:

"We held, however, in one case, that the rule did not apply where several adjoining tracts or parcels of land had been purchased and consolidated into one farm and held and known as such."

There is no right of redemption in the instant case, so the authorities cited (and the second Lea case being one of the authorities relied on by appellant) do not apply to the instant sale.

As to all parties not being before the court, the complainant represented the contingent remaindermen as a class under the terms of the will, and she has raised all issues which could be raised by the other contingent remaindermen, and it is not necessary for the Trustee to give notice to all contingent remaindermen. Bransford v. Andrews, 128 Tenn., 725; Gibson's Suits in Chancery, p. 797.

As to the contest in regard to the codicil of Mrs. Mary Bennett's will, that is not before this court now. We find that the Trustee had full authority to sell the tract of land under the terms of Mrs. Bennett's will.

"The provisions and conditions of the instrument creating the trust make the law by which the conduct of the trustees, in the management and disposition of the trust property must be regulated and controlled. Trustees accepting the trust upon the terms and conditions of such instruments have no power to alter, change or dispense with those terms and conditions, and where the trust instrument minutely and particularly describes the circumstances under which, and the manner in which the trustee shall have authority to sell the property, they have no power nor authority to dispose of it under any other circumstances or in any other manner. But if the instrument creating a trust has not got special directions as to the manner in which the trustee is to act, or the mode or means by which, or the time when he is to bring about such a sale, he must exercise his best judgment for the promotion of the interest of the beneficiaries under the trust." 26 R. C. L., 1289.

"It is now a well-settled principle that a trustee having the power to exercise discretion will not be interfered with by the court so long as he is acting bona fide. To do so would be to substitute the discretion of the court for that of the trustee. 26 R. C. L., sec. 1373.

"An express power of sale inserted in a deed or other instrument creating a trust is valid, and a sale and conveyance thereunder is

also valid, without authorization by the court, provided it is made under the circumstances and in the manner prescribed, is made by a proper trustee, and is of the property, for the purposes and the consideration recited in the instrument, and provided further that any discretion vested in the trustee is honestly and faithfully exercised." 39 Cyc., 348.

"A power of sale will even be implied from the power vested in trustees to invest and reinvest or to change investments." Purdie v. Whitney, 20 Pick. (Mass.), 25; Carlisle First Nat. Bank v. Lee (Ky.), 66 S. W., 413; In re Curtis, 26 R. I., 580, 60 Atl., 240.

And even in cases where an express power of sale is not vested in the trustee, it is within the authority of a court to direct the sale of trust property which, in its present state, is largely, if not wholly unproductive and is not yielding the income contemplated. Hale v. Hale, 146 Ill., 227, 33 N. E., 358; Marshall v. Caldwell, 125 Mass., 435; Webster Railroad Co. v. Delano, 135 N. Y. Appellate Division, 488; Morehead v. Wolff, 123 Pa. State, 365. See, also, Leno v. Arrington, 111 Tenn., 720; Weakley v. Barrow, 137 Tenn., 234; Hamilton v. Mound City Ins. Co., 6 Lea, 402.

"Unless bad faith or a gross and arbitrary abuse of discretion on the part of the trustee is shown, a court of chancery will never interfere with the performance of the duties of the trustee in carrying out the terms of the trust, "nor except where an intention of the settlor that the execution of the trust shall be under the supervisory control of the court is manifest in the instrument creating the trust, will it, of its own motion or at the instance of interested parties, interfere with the performance of his duties by the trustee and the exercise of the discretionary powers conferred upon him, unless there is shown bad faith on his part, or a gross and arbitrary abuse of discretion, or a complete refusal to act in the premises." 39 Cyc., 316, 317, citing numerous authorities.

"The rule upon this subject is that before a court of equity will interfere with the execution of a testamentary trust by a trustee, some danger from the misconduct or incapacity of the trustee must be shown or at least apprehended with good cause. Kerr v. White, 9 Baxter, 161; Jones v. Fulghum, 3 Coopers Chancery, 193-205; Binn v. White, Chancery Appeals, 42 S. W., 476-278; Vacaro v. Cicalla, 89 Tenn., 63.

"And where trustees have a discretionary power to consent (to a sale) or not, a court of equity has no power to control or enforce them." Deaderick v. Armour, 10 Humphries, 588-595.

We have carefully considered each of the ten assignments of error, and they are all overruled and disallowed for the reasons stated in this opinion. The decree of the Chancellor is in all things affirmed. The complainant will pay all of the cost of the appeal for which

execution will issue, it appearing that she has executed the oath for poor persons. The costs of the lower court will be paid as decreed by the Chancellor. The cause is remanded to the chancery court of Shelby county for the purpose of carrying out the decree confirming the sale of the farm about eight hundred acres described in the petition of the Trustee to the purchaser C. G. Smith, according to the terms of the contract made an exhibit to the petition, and for such other and further orders as may be necessary in this cause.

Heiskell and Senter, JJ., concur.